6 P.3d 43 (2000)
101 Wash.App. 704
STATE of Washington, Respondent,
v.
Roy C. REED, Appellant.
No. 44867-6-I.
Court of Appeals of Washington, Division 1.
August 7, 2000.
*44 David B. Koch, Nielsen Broman & Associates, Seattle, for Appellant.
Ann Foerschler Summers, King County Prosecuting Attorney's Office, Seattle, for Respondent.
BAKER, J.
Based upon a police officer's reported observation of a drug transaction, Roy Reed was arrested and charged with possessing cocaine with intent to deliver within 1,000 feet of a school bus stop. The trial court *45 granted the State's request to preclude disclosure of the officer's vantage point under a "surveillance location privilege" that has not been recognized by Washington statute or precedent. We decline the State's invitation to recognize that privilege because it would conflict with State v. Hudlow,[1] which delineates a defendant's constitutional rights to confront and cross-examine adverse witnesses. Because the police officer here was the only witness to the alleged transaction and because there was no corroborating evidence of Reed's participation in that transaction, the trial court committed reversible error.

I
The Seattle Police Department conducted a "see/pop" operation in Pioneer Square during February 1999. In this type of operation, a police officer monitors a specific location for illegal narcotics transactions and calls other officers to arrest those involved after a transaction is observed.
During the surveillance, Officer Jokela served as the observing officer. He testified that he was stationed between 100 and 150 feet above ground level, equipped with binoculars capable of magnifying objects ten times. The record does not disclose Officer Jokela's distance from any particular location where narcotics transactions may have occurred.
Officer Jokela testified that he saw Roy Reed speak with an unknown individual, provide that individual with what appeared to be two rocks of cocaine, and accept money in return. The alleged buyer walked away and was never apprehended. Less than a minute after the alleged transaction, Officer Jokela provided other officers with a description, and they approached Reed. As the officers approached, they saw Reed drop a plastic bag on the ground, and arrested him. The bag was recovered and substances therein were tested and found to contain cocaine, but no money was discovered during the search incident to Reed's arrest.
Reed was charged with possessing cocaine with intent to deliver within 1,000 feet of a school bus route stop. Before trial the State moved to preclude Reed from cross-examining Officer Jokela about his exact location at the time he said he observed the transaction. The State based its motion on what it called a "surveillance location privilege," but acknowledged that such a privilege is not explicitly set forth by Washington's statutes or precedent. Reed objected, asserting a right to discover the surveillance location, to cross-examine Officer Jokela about what he could or could not see, and to independently verify the visibility from the surveillance location because Officer Jokela was the only witness to the alleged transaction.
In response to Reed's objection, the State proffered photographs taken from what was asserted to be the surveillance location. The photographs were taken by Officer Jokela's supervisor. Officer Jokela had provided his supervisor with directions to the surveillance location but was not present when the photographs were taken two and a half months after Reed's arrest and at a time of day different from when Reed was arrested. The court excluded the photographs because it was "satisfied they are at a different time, a different place, different weather, different darkness."
Nonetheless, the court refused to allow Reed to discover Officer Jokela's exact location. Instead, the court limited Reed's questions to Officer Jokela's "height above the ground, his direct line of vision, all of those things which relate to what he was able to see, whether the trees had foliage on them, whether there were buses." At trial, Officer Jokela testified that his view on the day of Reed's arrest was not obstructed by buses, and that by using binoculars he was able to tell the difference between the size of a dime and a quarter at street level. However, he agreed that he was not necessarily able to make out facial characteristics and that he was not able to ascertain the denominations of the bills allegedly passed here.
Reed was convicted as charged, and now appeals.

*46 II
Trial courts have broad discretion in ruling on evidentiary matters and will not be overturned on appeal unless the trial court abused its discretion.[2] A trial court abuses its discretion when a decision is manifestly unreasonable or based on untenable grounds or untenable reasons.[3] The exclusion of evidence which a defendant has a constitutional right to elicit is an unreasonable exercise of discretion.[4]

III
Reed contends he had a right to confront the State's witness, Officer Jokela, concerning the location of the police observation post. A criminal defendant has a right, guaranteed by the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution, to confront and cross-examine adverse witnesses.[5]
The right to confront witnesses is subject to the following limitations: (1) the evidence must be relevant; and (2) the defendant's right to introduce relevant evidence must be balanced against the State's interest in precluding evidence so prejudicial that it disrupts the fairness of the fact-finding process. If the defendant shows that the evidence is minimally relevant, the evidence must be admitted unless the State can demonstrate a compelling state interest for excluding the evidence. If the evidence is characterized as being of high probative value, there can be no state interest compelling enough to preclude its introduction.[6]
Reed argues that the trial court erred in precluding cross examination about Officer Jokela's location because he was the only witness who saw the alleged transaction. The State concedes that "Officer Jokela's ability to see was potentially a significant area of cross examination," but asserts that Reed did not meet his burden of showing how obtaining the exact location would have aided him in cross-examining the officer, and that Reed was allowed to examine the officer as to his distance from the location of the transaction in addition to being provided with photographs taken from the surveillance location. But the record does not indicate that Reed was allowed to question Officer Jokela as to his distance from the location of the alleged transaction. And the trial court excluded the photographs in part because they did not depict the surveillance location.
The State argues that this court should recognize under RCW 5.60.060(5) a "surveillance location privilege" as a limitation on a defendant's right to cross-examine the State's witnesses. The State argues that such a privilege is included within RCW 5.60.060(5), which reads:
A public officer shall not be examined as a witness as to communications made to him or her in official confidence, when the public interest would suffer by the disclosure.
We disagree. The surveillance location here was not a "communication made ... in official confidence." The State's interpretation of this statute distorts its clear meaning.[7]
*47 The State next urges us to adopt a "surveillance location privilege" under the common law or as set forth under Federal Rules of Evidence (FRE) 501 by the District of Columbia Circuit in U.S. v. Harley[8] and U.S. v. Foster.[9]
FRE differs from ER 501 in many important respects, and provides:
Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience....
Notably, ER 501 was initially reserved when this State adopted a modified form of the Federal Rules of Evidence in 1979, and thus the above cited language of the federal rule has no applicability here. When ER 501 was amended in 1988, it simply added a list of references to statutory and case law privileges for the guidance of practitioners. ER 501 does not track FRE 501.
Moreover, even if the federal rule did serve as persuasive authority for recognizing the "surveillance location privilege" advocated by the State, we note that only the District of Columbia Circuit has recognized that privilege.[10] The courts in Harley and Foster based the existence of the privilege upon U.S. v. Green.[11]Green is simply not on point, as it involved an appeal of the trial court's recognition of a qualified privilege not to disclose a surveillance location during a pretrial suppression hearing.[12] A police officer testified that he had made various observations from a hidden observation post.[13] The defendant sought to identify the post and the government's objection was sustained.[14] The court in Green made clear that its rulings did not apply to the trial context, but only embraced pretrial proceedings, stating:
Because of the distinction between suppression hearings and criminal trials, see note 9 supra, and because of the more extensive procedural protections associated with the latter, our holding does not suggest that the nondisclosure of a police surveillance location would be proper at trial. Indeed, our recognition of a surveillance location privilege is built upon the established informer's privilege, Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), and its progeny; this suggests that when identification of the surveillance location "is relevant and helpful to the defense of an accused ... the privilege must give way." 353 U.S. at 60-61, 77 S.Ct. at 627-628. That issue, however, is not directly before us, and we make no holding in its regard.[[15]]
*48 Furthermore, neither Harley nor Foster supports the State's contention that the surveillance location here should be shielded from disclosure even if we were inclined to recognize that privilege in Washington under the common law.
In Harley agents watched a narcotics transaction while filming the transaction with a camera equipped with a zoom lens.[16] That film was introduced at trial, and showed "the view the officers in the surveillance post had, the distance, the angle, and the existence or nonexistence of obstructions in the line of sight."[17] Defense counsel sought disclosure of the location from which the surveillance was taken, and the court barred this inquiry.[18] On appeal it was held that the "surveillance location privilege, like the informer's privilege, applies at trials and that it, too, is to be applied through a balancing test controlled by `the fundamental requirements of fairness.'"[19]
In Harley the defendant was provided with the film taken from the location and was thus unable to show how the identity of the location itself would be relevant or helpful to his defense. But here there was no evidence corroborating Officer Jokela's stated observation of a drug transaction. Reed contends he needed to know the exact location of the surveillance post in order to cross-examine Officer Jokela effectively about the accuracy of his observations. Because Officer Jokela's testimony was critical to the State's proof that Reed actually delivered the drugs, Reed should have been allowed to learn the officer's location and independently verify the accuracy and veracity of Officer Jokela's statement.
In Foster an agent used binoculars to observe a narcotics transaction 150 yards away from a concealed surveillance location.[20] The agent contacted police officers, who effected an arrest based upon the officer's description of the alleged dealer.[21] Foster sought disclosure of the location from which the surveillance was taken, and the court barred the inquiry.[22] On appeal the court acknowledged the privilege as discussed in Harley, but distinguished that case on the basis that "the witness claiming the privilege was crucial to the prosecution" and that "the government's case against Foster would have collapsed" without the witness's testimony.[23]
Under Foster even if a "surveillance location privilege" were recognized in this State, it would not properly apply to this case. Officer Jokela's testimony was critical to the prosecution because he was the only person who provided proof that Reed actually delivered drugs. Without Officer Jokela's statement, the government's case of possession with intent to deliver collapses because there is no corroborating evidence such as money, paraphernalia, or eyewitness testimony.
The public policy arguments advanced by the State in support of establishing a "surveillance location privilege" are not persuasive. The State argues, based on anecdotal information and generalized comments, about the need for safety of surveillance officers and those who allow surveillance activities on their property. But no evidence specific to this case was offered. Indeed, no specific evidence in support of nondisclosure was offered. Criminal defendants are not required to take a police officer at his or her word when they claim to have had a clear view of a criminal act. The drafters of our Bill of Rights sought to insure a balanced adversarial encounter between criminal defendants *49 and the State by providing the protections of the Fifth and Sixth amendments.[24]
A defendant's constitutional right to confront and cross-examine adverse witnesses in Washington has been clearly set forth by our Supreme Court in Hudlow.[25] Under the test set forth in Hudlow, the concept of "privilege" does not limit a criminal defendant's right of cross examination. Rather, the evidence sought to be admitted by a defendant must be relevant and the defendant's right to such evidence must be balanced against the State's interest in precluding evidence so prejudicial that it disrupts the fairness of the fact-finding process.[26] Under this test, evidence relevant to the defense of an accused will seldom be excluded, even in the face of a compelling state interest.[27] Evidence of the location of an observation post is unlikely to be relevant where the surveillance officers are not essential witnesses for the prosecution or where no question is raised about their ability to observe. But where there are reasonable grounds to question whether an observing officer has misperceived critical events or misidentified a defendant, a defendant should not be deprived of the means to explore this possibility.[28] As stated by the court in Foster:
It is no answer to say, as the government does, that the defense failed to cast substantial doubt on the accuracy of [the observer's] testimony. Creating such doubt would have been one of the objectives of cross-examination following revelation of the observation post. The essence of successful cross-examination is in selecting questions that undermine the witness's version of reality. This is not so much a matter of showing a witness to be lying. An effective trial lawyer can often manage to leave the jury with the impression that the witness is too caught up in his own view, his confusions, his own particular slant on things, that it simply does not matter whether the witness believes his own testimony.[[29]]
Finally, we note the State's concession at oral argument that it is asking this court to recognize a qualified privilege, rather than an absolute privilege. Hudlow sets forth a rule roughly equivalent to the type of privilege requested by the State.[30] The only effective distinction we can see is that under Hudlow the State, rather than the defendant, bears the burden on the issue of whether disclosure of the location should be required. The State has not explained why the rule set forth in Hudlow is inadequate, and we are unwilling to intrude upon the constitutional rights delineated by that case.
We do not hold that under no circumstances may a trial court preclude disclosure of an officer's vantage point. Where no question is raised about a surveillance officer's ability to observe or where a contemporaneous videotape provides the relevant evidence, a defendant's constitutional rights may not be implicated. But here, while Reed was not totally precluded from cross-examining Officer Jokela, the State cannot justifiably withhold the surveillance location in light of the fact that there was no evidence corroborating Officer Jokela's account of the alleged transaction. Because Officer Jokela was the only witness to the alleged transaction, the trial court committed reversible error by excluding evidence about the officer's location.
REVERSED.
APPELWICK, J., and BECKER, A.C.J., concur.
NOTES
[1] 99 Wash.2d 1, 14-15, 659 P.2d 514 (1983).
[2] State v. Ellis, 136 Wash.2d 498, 523, 963 P.2d 843 (1998); Sintra, Inc. v. City of Seattle, 131 Wash.2d 640, 662-63, 935 P.2d 555 (1997) (citing Industrial Indem. Co. v. Kallevig, 114 Wash.2d 907, 926, 792 P.2d 520, (1990)).
[3] State v. McDaniel, 83 Wash.App. 179, 185, 920 P.2d 1218 (1996), review denied, 131 Wash.2d 1011, 932 P.2d 1255 (1997); In the Matter of the Marriage of Littlefield, 133 Wash.2d 39, 46-47, 940 P.2d 1362 (1997).
[4] Ellis, 136 Wash.2d at 523, 963 P.2d 843.
[5] Davis v. Alaska, 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); State v. Hudlow, 99 Wash.2d at 14-15, 659 P.2d 514. We also note that under CrR 4.7(e)(1), a criminal defendant may also obtain relevant material and information, where disclosure is not otherwise mandated by criminal rules, upon a showing of materiality to the preparation of the defense and that the request is reasonable.
[6] Hudlow, 99 Wash.2d at 16, 659 P.2d 514.
[7] See State v. Huntley, 45 Wash.App. 658, 661, 726 P.2d 1254 (1986). We also note that privileges are generally disfavored in this State and that other subsections of RCW 5.60.060 have been strictly construed. State v. Ackerman, 90 Wash.App. 477, 487, 953 P.2d 816 (1998); State v. Ross, 89 Wash.App. 302, 307, 947 P.2d 1290 (1997), review denied, 135 Wash.2d 1011, 960 P.2d 939 (1998).
[8] 682 F.2d 1018 (D.C.Cir.1982).
[9] 986 F.2d 541 (D.C.Cir.1993).
[10] As supplemental authority, the State has cited cases from several other jurisdictions that have recognized privileges concerning police observation posts. Commonwealth v. Grace, 43 Mass. App.Ct. 905, 681 N.E.2d 1265 (1997) (disclosure of surveillance location not relevant to proving police officer's bias); Cf. Commonwealth v. Hernandez, 421 Mass. 272, 656 N.E.2d 1237 (1995) (disclosure of surveillance location required where defendant makes preliminary showing that evidence is material); People v. Garza, 32 Cal.App.4th 148, 38 Cal.Rptr.2d 11 (1995) (California statute precludes disclosure of "official information" unless it is material to defendant); State v. Ribalta, 277 N.J.Super. 277, 649 A.2d 862 (1994) (former evidence rule precludes disclosure of "official information" that is not vital to defendant); Commonwealth v. Jennings, 428 Pa.Super. 297, 630 A.2d 1257 (1993) (evidence rule precludes disclosure of surveillance location unless defendant can establish that "interests of justice" served). These cases are distinguishable on several bases and, more importantly, do not comport with the constitutional rights of a defendant in this State that are set forth in Hudlow.
[11] 670 F.2d 1148 (D.C.Cir.1981).
[12] Green, 670 F.2d at 1150.
[13] Green, 670 F.2d at 1150.
[14] Green, 670 F.2d at 1150.
[15] Green, 670 F.2d at 1157 n. 14. In addition to discounting the above statement of the court in Green, the courts in Harley and Foster also appear to have overlooked the United States Supreme Court case of McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), which unequivocally reaffirmed the holding of Roviaro that:

where, in an actual trial of a federal criminal case, the disclosure of an informer's identity is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the [informer's] privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action.
McCray, 386 U.S. at 310, 87 S.Ct. 1056 (internal citations and quotations omitted).
[16] Harley, 682 F.2d at 1019-1020.
[17] Harley, 682 F.2d at 1020-1021.
[18] Harley, 682 F.2d at 1020.
[19] Harley, 682 F.2d at 1020.
[20] Foster, 986 F.2d at 542.
[21] Foster, 986 F.2d at 542.
[22] Foster, 986 F.2d at 542.
[23] Foster, 986 F.2d at 543.
[24] Jay Sterling Silver, Truth, Justice, and the American Way: The Case Against the Client Perjury Rules, 47 Vand. L.Rev. 339, 341-342.
[25] Hudlow, 99 Wash.2d at 15-16, 659 P.2d 514.
[26] Hudlow, 99 Wash.2d at 15, 659 P.2d 514.
[27] Hudlow, 99 Wash.2d at 16, 659 P.2d 514.
[28] See United States v. Foster, 986 F.2d at 544.
[29] Foster, 986 F.2d at 544.
[30] We note that Hudlow also comports with the pronouncements of the United States Supreme Court cases of Roviaro and McCray, and that the State has not explained how its formulation of a "surveillance location privilege" can be squared with the holdings of our state or federal supreme courts.