# Illinois Official Reports

## Appellate Court

*People v. Reed*, 2013 IL App (1st) 113465

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BELTON REED, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-11-3465 |
| Filed | December 31, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's conviction for unlawful possession of a controlled substance, the appellate court rejected defendant's contention that the trial court improperly restricted his sixth amendment right to confront the evidence against him by precluding the disclosure of the surveillance location of the only officer who saw defendant possess narcotics and engage in three drug transactions, since the trial court conducted an *in camera* interview of the officer involved in the surveillance and concluded that an ongoing investigation warranted preserving the secrecy of the officer's exact location, and there was no indication that the trial court abused its discretion in applying the surveillance location privilege to deny disclosure. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-17863; the Hon. Maura Slattery Boyle, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier and Caroline E. Bourland, both of State Appellate Defender's Office, of Chicago, for appellant. |
|---|---|
| | Anita M. Alvarez, State's Attorney, of Chicago (Joseph Carlson, Assistant State's Attorney, of counsel), for the People. |
| Panel | PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion. Justices Neville and Mason concurred in the judgment and opinion. |

## OPINION

¶ 1    Defendant Belton Reed was convicted of possession of a controlled substance, after a bench trial. The trial court sentenced Reed to a five-year extended prison term. On appeal, Reed contends the trial court impermissibly restricted Reed's sixth amendment right to confront the evidence against him by denying disclosure of the surveillance location of the only officer who saw Reed possess the narcotics. We affirm. Our careful review of the record does not establish that the trial court abused its discretion in precluding disclosure of the officer's surveillance location.

¶ 2                                    Background

¶ 3    Reed filed a pretrial motion for disclosure of Chicago police officer Daniel Honda's surveillance location, alleging that the location was material to the issue of his guilt and that the case against him turned almost entirely on the officer's testimony. The assistant State's Attorney informed the court that the officer was in court, that he provided distances, and that he did not wish to disclose the exact location where he had been. Defense counsel indicated that he expected greater specificity in terms of distance and direction. The trial court then conducted an *in camera* interview of the surveillance officer, which was not transcribed, and denied the motion to disclose surveillance based on the "ongoing investigation."

¶ 4    The State's trial evidence established that at around 11 a.m. on September 6, 2010, Officer Honda, from his vantage point in the area of Douglas Park, in the vicinity of Roosevelt Road and Whipple Street, observed Reed engage in three transactions. Officer Honda's surveillance location was slightly elevated and about 100 feet from Reed. In the morning daylight, Officer Honda had an unobstructed view of Reed and watched as Reed engaged in three separate transactions at about 3034 West Roosevelt Road. One of the individuals who engaged in the transactions was a white male, and two were black males.

¶ 5    During each transaction, an individual approached Reed on foot and gave an unknown amount of cash to him. Reed placed the cash in the right pocket of his shorts. Officer Honda

could not see the denominations of the cash. After Reed placed the cash in his clothing, he directed the individual to cross Roosevelt Road by pointing with his finger. The individual then relocated to the sidewalk on the other side of the street at about 3033. Officer Honda's view of the individuals was unobstructed. Reed walked over to a grassy area near the sidewalk at the address of 1147 South Whipple Street, walked to the curb, lifted the weeds that covered the curb, and retrieved a clear plastic bag from underneath the weeds. When Reed went to the grassy area, he remained within Officer Honda's sight. Nothing obstructed Officer Honda's view of Reed when Reed lifted the patch of weeds. Reed removed an item from the clear plastic bag, placed the bag back underneath the weeds, relocated across the street, and gave the item to the individual who was waiting. The individual then left the area. The three transactions took a total of about 20 to 25 minutes. While Officer Honda was on surveillance, he did not see anyone else go to the grassy area at 1147 South Whipple Street.

¶ 6        After the third transaction, Reed walked back and forth from the front of a store at around 3034 West Roosevelt Road to the Whipple Street side of the store. Officer Honda radioed his partner, Officer Acevedo, and provided a full description of his observations and of Reed. Enforcement was asked to detain Reed. Officer Honda left his surveillance point and relocated to where Officer Acevedo and Reed were. The officers had a conversation and Officer Honda confirmed Reed's identity as the offender. Officer Honda believed that the three transactions were narcotics transactions. Officer Honda directed Officer Acevedo to the curb at 1147 South Whipple Street, and Officer Acevedo recovered a clear plastic bag containing 5 small Ziploc bags, each of which contained 2 tinfoil packets for a total of 10 tinfoil packets.

¶ 7        During cross-examination, Officer Honda testified that his distance from Reed was about 100 feet when Reed relocated to 1147 South Whipple Street. At a preliminary hearing on September 30, 2010, Officer Honda testified that he was about 50 to 100 feet from Reed when defendant was at the area of the weeds. There was no traffic control device at Roosevelt and Whipple and there were no buildings around 3033 West Roosevelt. There was just a park with a lot of trees. Other than that, it was an open area. The drugs were nowhere near the tree shown in a photograph of the area of 1147 South Whipple, which was not included in the record on appeal. Only Officers Honda and Acevedo were out there, but, in his reports, Officer Honda referred to multiple enforcement officers. The parties stipulated that during a preliminary hearing on September 30, 2010, Officer Honda testified that he provided a full description to enforcement officers, who arrived on the scene shortly after and detained Reed. Officer Honda did not recall from which direction any of the unknown individuals had come, nor did he recall in which direction any of them had left. Officer Acevedo lifted the weeds and retrieved the bags. At the preliminary hearing, Officer Honda testified that he lifted the weeds. Officer Honda could not identify whatever Reed gave to the unknown individuals, the amount of cash tendered between the individuals and Reed, or any further description of the unknown black males or any information about the unknown white male, beyond their race and gender. The bag that Officer Honda observed was not visible except when Reed lifted the patch of weeds. No drugs were found on Reed's person. Officer Honda observed Officer Acevedo approach Reed, and Reed did not run or attempt to flee. Reed was on the scene when Officer Honda arrived. After Officer Acevedo recovered the plastic bags from underneath the weeds at

1147 South Whipple Street, Officer Honda saw that the bags were clear plastic Ziploc bags, each one containing two tinfoil packets. He believed that there was "some blue Superman imprint," which he did not mention in his reports.

¶ 8 During redirect examination, Officer Honda testified that he did hear someone near Reed yelling out "blows" or "rocks" at the location before the transactions, but he observed only Reed engaging in hand-to-hand transactions there. There were a lot of trees in Douglas Park, but trees did not obstruct Officer Honda's view of Reed and the unknown individuals.

¶ 9 Chicago police officer Jason Acevedo testified that he was the enforcement officer and maintained radio communications with Officer Honda during the surveillance. Officer Honda indicated that Officer Acevedo should detain someone, and Officer Honda directed him to the area of 3034 West Roosevelt, where there were overgrown weeds at the curb. From there, Officer Acevedo recovered one clear plastic bag containing five Ziploc bags, each of which contained two tinfoil packets of a white powdered substance suspected to be heroin. Officer Acevedo identified Reed in court as the individual who was detained. Officer Acevedo participated in his detention. Officer Acevedo gave an inventory bag containing the narcotics to Officer Wrigley, the inventory officer.

¶ 10 Chicago police officer John Wrigley testified that he inventoried the items of suspected narcotics that Officer Acevedo had recovered, and the $71 that Officer Beyna had recovered from Reed's person.

¶ 11 The parties stipulated that Kimberly Blood, an Illinois State Police forensic chemist, would testify that she tested the substance in 6 of the 10 plastic bags, that those 6 bags proved positive for 1.1 grams of heroin, and that if she had tested the contents of the remaining 4 bags, the total weight would have been 1.8 grams.

¶ 12 In finding Reed guilty of possession of a controlled substance, the court observed that Officer Honda testified that he conducted surveillance during the morning from a vantage point that was:

"in the vicinity of Douglas Park, specifically, Roosevelt and Whipple area *** and that he was approximately anywhere from 50 to a hundred feet. He said a hundred feet today, but the Court does not find that he was impeached by the Grand Jury [*sic*] testimony. He had no obstructions. He states he observed three transactions ***."

¶ 13 In his posttrial motion, Reed contended that the trial court erred in denying his pretrial motion to disclose the surveillance location. The trial court also denied the posttrial motion and observed:

"And the Court did not err in denying the defense motion to disclose the surveillance location. There was still plenty of opportunity for the defense to make a visual assessment to determine the exact location. The Court did not believe that interfered with any right of confrontation or preparing for the trial and again, the Court does not feel that the decision or the evidence that the Court relied on or heard was a finding against the manifest weight of the evidence."

¶ 14 This timely appeal followed.

¶ 15                                      Analysis

¶ 16        Reed contends that the trial court impermissibly restricted his sixth amendment right to confront the evidence against him by denying disclosure of the surveillance location of the only officer who saw him possess the narcotics.

¶ 17        The sixth amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him." U.S. Const., amends. VI, XIV; see also Ill. Const. 1970, art. I, § 8. The trial court has discretion to limit the scope of cross-examination at trial, and this court will not disturb the trial court's decision absent an abuse of discretion. *People v. Enis*, 139 Ill. 2d 264, 295 (1990).

¶ 18        There is a qualified privilege concerning disclosure of secret surveillance locations. *People v. Criss*, 294 Ill. App. 3d 276, 281 (1998). Whether disclosure is needed is decided on a case-by-case basis. Courts balance the public interest in keeping the location secret with the defendant's interest in preparing a defense. *Id*. The defendant's right to cross-examination concerning the surveillance location is more important if the witness is more important to the State's case. *People v. Knight*, 323 Ill. App. 3d 1117, 1127-28 (2001). If the State's case against the defendant depends almost exclusively on one police officer's testimony, disclosure must "almost always" be required. *Id*. at 1128. Disclosure would not be required where there is no question about the surveillance officer's ability to observe, or where evidence appears on a contemporaneous videotape. *Id*.

¶ 19        If the State invokes the privilege against disclosure of the surveillance location, the State has the initial burden to demonstrate that the privilege applies. *People v. Price*, 404 Ill. App. 3d 324, 331 (2010). That burden is satisfied by proof that the surveillance location was either on private property with the owner's permission, or in a useful location that would be compromised by disclosure. *Id*. at 332.

¶ 20        Reed first argues that the court gave an insufficient reason for denying disclosure, *i.e.*, "ongoing investigation," and failed to properly weigh the public's interest in nondisclosure of the surveillance point against his need for the information.

¶ 21        The record before us is insufficient for us to conduct a meaningful review of the reasons for the trial court's application of the surveillance location privilege. When Reed moved for disclosure, the court conducted an *in camera* interview of Officer Honda, then concluded that an ongoing investigation warranted preserving the secrecy of Officer Honda's exact location. The proceeding was apparently not transcribed, so we have no information as to what Officer Honda told the court. Also, although Reed decries the lack of detailed findings, he did not ask the court to clarify its reasoning or state its findings with greater specificity. As noted by the concurring justice in *People v. Britton*, 2012 IL App (1st) 102322, ¶¶ 35-36 (Epstein, J., specially concurring), surveillance location cases often involve inadequate records due to the nature of *in camera* proceedings. Nevertheless, it is the appellant's burden to provide this court with a record adequate to support claims of error, and in the absence of an adequate record, we resolve all doubts against the appellant and presume that the trial court's ruling had a sufficient legal and factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984); see also *People v. Deleon*, 227 Ill. 2d 322, 342 (2008); *People v. Britton*, 2012 IL App (1st) 102322, ¶¶ 36-38

(Epstein, J., specially concurring). Therefore, we will presume that, at the *in camera* hearing, the court heard information sufficient to sustain the State's burden that the privilege applied.

¶ 22    Reed next contends that, even if there were reasons supporting nondisclosure, the court erred in applying the surveillance location privilege because disclosure must "almost always" be ordered when the case turns on the ability of a single officer to observe the offense. In making this argument, Reed relies primarily on *Knight*, 323 Ill. App. 3d at 1128, and *Price*, 404 Ill. App. 3d at 331. In both of these cases, the officers' ability to observe what they testified to was called into serious question. For example, in *Knight*, identity was contested where a church pastor testified that defendant was unloading a van at the location where he was arrested for selling drugs, and there was testimony that a man wearing a jacket similar to defendant's was in the area selling drugs. The officer could not recall what type of jacket defendant wore. Also, the surveillance officer observed only a single transaction, lost sight of the offender for a few minutes, and recovered no money from defendant despite having observed defendant receive money in exchange for suspected drugs. In *Price*, 404 Ill. App. 3d at 332-33, this court held that the trial court erred in recognizing the surveillance location privilege where the State failed to show, as part of its initial burden, that the location was either "on private property with the permission of the owner," or "in a location that is useful and whose utility would be compromised by disclosure." Unlike *Price*, the trial court here conducted an *in camera* interview of the officer, and we have no record of what information was imparted to the trial court.

¶ 23    Officer Honda testified regarding his distance from Reed, his vantage point, his level of elevation, the type of lighting, the lack of obstructions and his ability to hear from his surveillance point. When shown a photograph of a tree (which is not contained in the record), the officer explained that the transactions he observed were not obstructed by the tree. Unlike *Knight*, 323 Ill. App. 3d at 1119-21, 1128, there was no evidence that seriously called into question the officer's ability to observe. On this record, we cannot find that the trial court abused its discretion in denying Reed's motion to disclose the officer's exact surveillance location.

¶ 24    The judgment of the circuit court is affirmed.

¶ 25    Affirmed.