# Illinois Official Reports

## Appellate Court

---

### *People v. Flournoy*, 2016 IL App (1st) 142356

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LUCIUS FLOURNOY, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-14-2356 |
| Filed | November 3, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CR-11155; the Hon. Michael B. McHale, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Arianne Stein, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Jon Walters, and Samuel C. Ray, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion.<br>Justices Howse and Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1      Following a bench trial, defendant Lucius Flournoy was convicted of possession of a controlled substance with intent to deliver and sentenced to nine years in prison. On appeal, defendant contends that the trial court erred in denying his pretrial motion to disclose the surveillance location from which an officer observed him participate in drug transactions or, in the alternative, that the "surveillance location privilege" should be rejected as a matter of law because it offends the fundamental right to confrontation. Defendant further contends that the mittimus should be corrected to reflect the actual name of the offense of which he was convicted.

¶ 2      For the reasons that follow, we find that the trial court abused its discretion in applying the surveillance location privilege in this case. Accordingly, we reverse and remand for a new trial.

¶ 3      Defendant's conviction arose from the events of May 17, 2013. Following his arrest, defendant was charged by information with one count of possession of a controlled substance with intent to deliver and one count of possession of a controlled substance. Prior to trial, the State indicated in its answer to defendant's motion for discovery that no electronic surveillance of defendant "or his premises" existed. Defendant thereafter filed a motion to compel disclosure of surveillance locations. In the motion, defendant asserted that because the State's case against him would rest on the ability of the police officers involved to observe alleged narcotics transactions, disclosure of the surveillance location was required in order for him to investigate the officers' ability to observe and to effectively exercise his constitutional right to confrontation. The State did not file a written response to the motion.

¶ 4      When the motion was called, defense counsel stated that it was her understanding that the State would be "claiming privilege." The assistant State's Attorney agreed, but provided no further explanation or a written motion on the matter. The trial court proceeded to hold an *in camera* hearing with an enforcement officer, Chicago police officer Michael Basile, off the record. Following that hearing, the trial court announced that, based on its review of the arrest report and its conversation with the officer, it found that the State had made a preliminary showing that disclosure of the surveillance location would harm the public interest and should remain privileged. The following exchange ensued:

> "[DEFENSE COUNSEL]: Well, Judge, typically I understand that an exact location wouldn't be given, but a general area of where he was in terms of the number of the feet he was away and his, I guess if it was north, south, east or west. I understand that an address can't be given but typically—
>
> THE COURT: In some cases it can, but I don't think it's appropriate in this instance.
>
> [DEFENSE COUNSEL]: Right. I understand, but typically, just a general direction and the number of feet away. Typically other courts have said whether it was ground level or above.
>
> THE COURT: You would be able to cross as to the distance whether any possible obstructions, any visual aids, but I'm not going to disclose—for me to disclose further, given the location and the fact that this is a vacant lot, I'm not going to disclose anything further than what you're entitled to on cross. That's my ruling. What's our next step?

> [DEFENSE COUNSEL]: Was a surveillance location in the vacant lot?
>
> THE COURT: No the transaction, according to the arrest reports, was done in a vacant lot."

No transcript of the *in camera* hearing appears in the record.

¶ 5    At trial, Chicago police officer Brian Doherty testified that on the day of the offense, he was working as the surveillance officer with a team that was responding to complaints of narcotics sales in the area of 13th Street and Karlov Avenue. Just before noon, Officer Doherty positioned himself and began his surveillance. A man, identified in court as defendant, appeared and started walking up and down the street. Shortly thereafter, an unidentified man on a bicycle approached defendant and engaged him in a short conversation. Defendant and the man moved to a vacant lot at approximately 1315 South Karlov Avenue. While the men were in the vacant lot, Officer Doherty witnessed a hand-to-hand transaction. Specifically, he saw the unidentified man give defendant an unknown amount of paper currency in exchange for a small white item that defendant retrieved from the rear waistband of his pants. Defendant then returned to the sidewalk and resumed walking about. Officer Doherty testified that, during the transaction in the vacant lot, he was about 20 feet from defendant, it was daylight, nothing obstructed his view, and he had a clear line of sight.

¶ 6    Officer Doherty testified that several minutes after the first transaction, a white woman and a black woman approached defendant almost simultaneously from the south, one from the west side of the street and the other from the east. Defendant and the two women moved about five feet off the sidewalk into the vacant lot. There, defendant removed small white items from his rear waistband and gave them to the women in exchange for an unknown amount of paper currency. Again, Officer Doherty testified that during the transactions, he was about 20 feet from defendant.

¶ 7    Following the exchanges with the women, defendant began to walk through the vacant lot toward an alley. Officer Doherty called for enforcement officers, whom he saw approach from the north and detain defendant in the alley. Officer Doherty had not "broken surveillance" at that point and was in constant radio contact with the enforcement officers. He learned from one of the enforcement officers, Officer Basile, that they had recovered a plastic bag containing suspect heroin from defendant's hand.

¶ 8    At the police station, Officer Doherty observed while Officer Basile performed a custodial search of defendant. Officer Basile asked defendant what the "plastic item" in his rear waistband was, at which time defendant reached into his boxer shorts, pulled out a plastic bag, and threw it to the ground. According to Officer Doherty, Officer Basile recovered the bag and found that it contained eight smaller ziplock bags of suspect heroin.

¶ 9    On cross-examination, Officer Doherty confirmed that his surveillance location was within 20 feet of the vacant lot, to the north, and stated that he was in an elevated position, "approximately" two stories from the ground. When defense counsel asked Officer Doherty whether he was in the open air or "in something," the trial court sustained the State's objection. Officer Doherty stated that while defendant walked around on the sidewalk, he was able to view defendant from the front, rear, left, and right; that he did not use any visual aids; and that nothing blocked his view. He identified photographs of the vacant lot and agreed that they fairly and accurately depicted the lot as he viewed it on the day of the offense, except for the presence of snow and the complete absence of leaves on the trees. With regard to leaves, Officer Doherty agreed that there were "some buds" on the trees on the day he observed

defendant, but asserted that to the best of his recollection, leaves had not "fully bloomed" yet. Officer Doherty specified that when defendant and the unidentified man moved into the vacant lot, they stopped in a location about five feet off the sidewalk, next to a building on the north side of the lot. At that time, Officer Doherty's vantage point of defendant was the "top of his head." When asked about defendant's interactions with the two women, Officer Doherty stated that they relocated from the sidewalk to the same spot in the vacant lot where defendant had interacted with the unidentified man, and that he "could hear conversation [but] wasn't able to determine what it was."

¶ 10    Finally, Officer Doherty testified on cross-examination that no money was inventoried after the custodial search. He did not recall whether any currency was recovered from defendant and agreed that none was documented in the arrest report.

¶ 11    Chicago police officer Michael Basile testified that on the day of the offense, he and another officer, Steve Vidljinovic, were working as enforcement officers on the narcotics team with Officer Doherty, with whom they had constant radio communication. Sometime after surveillance was set up, Officer Doherty radioed a physical description of defendant and indicated the direction defendant was walking. Based on that information, Officer Basile drove into an alley, where he and Officer Vidljinovic saw and detained defendant. Officer Basile recovered a ziplock bag of suspect heroin from defendant's left hand. After placing defendant into custody, the officers took defendant to the police station. There, Officer Basile performed a custodial search, during which he felt a bulge in defendant's back waistband. Defendant removed the item causing the bulge, which turned out to be a bag containing eight ziplock bags of suspect heroin, and placed it on the floor. Officer Basile recovered the bags from the floor and, along with the bag recovered from defendant's hand, inventoried them.

¶ 12    On cross-examination, Officer Basile acknowledged that he did not see any transactions. He and Officer Vidljinovic arrived in "the area" at approximately 11:55 a.m., and about 10 minutes elapsed between their arrival and Officer Doherty's radio message directing them to detain defendant. Officer Basile further testified that defendant was arrested about 12:05 p.m. When shown that the arrest report indicated an arrest time of 12:57 p.m., Officer Basile explained that that time notation was an error, and actually reflected the time defendant was processed, not arrested.

¶ 13    A forensic scientist with the Illinois State Police crime laboratory testified that the item recovered from defendant in the alley weighed 0.2 grams and tested positive for the presence of heroin and that the contents of four of the eight bags recovered from defendant's waistband at the police station weighed 0.5 grams and tested positive for the presence of heroin.

¶ 14    After the State rested, defendant made a motion for directed finding, which the trial court denied.

¶ 15    Defendant recalled Officer Doherty and attempted to impeach him regarding the exact time of arrest. Officer Doherty testified that he began his surveillance around noon. He could not independently recall the time of arrest, but stated he believed it occurred "right around noon" and would have to refer to his report. Officer Doherty acknowledged that at the preliminary hearing, he answered affirmatively to a question whether he was "working" at approximately 12:57 p.m. that day.

¶ 16    Defendant did not testify or call any other witnesses.

¶ 17 In closing, defense counsel argued that the State had not proved the element of intent to deliver. Counsel emphasized that no money was recovered from defendant, asserted that the nine bags of drugs defendant possessed could have been for his personal use, noted that the officers were impeached regarding the time of arrest, and questioned the chain of custody. Counsel further argued that because no alleged buyers were stopped, there was no actual evidence of what, if anything, was actually exchanged between them and defendant. Counsel suggested that "[t]here's nothing wrong with exchanging cigarettes, for instance, or exchanging a stick of gum, or a tissue, or any number of items that he could have been giving to these other people that's perfectly innocuous and perfectly innocent, not against the law."

¶ 18 The State, in contrast, argued that Officer Doherty testified credibly, was experienced, and "knows what he saw." The State further asserted that there was no chain of custody issue and that the time of arrest indicated on the arrest report was not impeaching because Officer Doherty was still working at 12:57 p.m.

¶ 19 Following closing arguments, the trial court found defendant guilty of count I, possession of a controlled substance with intent to deliver, and count II, possession of a controlled substance. In doing so, the trial court recited that Officer Doherty was only 20 feet from defendant, with nothing—including leaves—obstructing his view when he observed defendant engage in three transactions. Additionally, the court found it "[v]ery important" that Officer Doherty "never lost sight of [defendant] after radioing the enforcement officer."

¶ 20 Defendant filed a motion for a new trial and an amended motion for a new trial. The trial court denied those motions. Subsequently, the court merged count II into count I and imposed a sentence of nine years' imprisonment. Defendant thereafter filed a motion to reconsider sentence, which the trial court denied.

¶ 21 This appeal followed.

¶ 22 On appeal, defendant contends that this court should reverse his conviction and remand for a new trial because the trial court improperly denied his request for disclosure of Officer Doherty's surveillance location. Defendant argues that this court should reject the surveillance location privilege as a matter of law because it offends the fundamental right to confrontation. In the alternative, he argues that disclosure was warranted here because the case turned almost exclusively on Officer Doherty's testimony and nothing in the record demonstrated that disclosure would have compromised the officer's safety.

¶ 23 As an initial matter, we address the State's argument that defendant has forfeited review of this issue by failing to raise it in either of his posttrial motions. The State is correct that ordinarily, a defendant must object at trial and include a claim in a posttrial motion in order to preserve it for appellate review. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, *Enoch* includes an exception to forfeiture for constitutional issues that were not included in a posttrial motion, but were raised at trial and could be raised later in a postconviction petition. See *People v. Almond*, 2015 IL 113817, ¶ 54; *People v. Cregan*, 2014 IL 113600, ¶ 16. In such cases, "the interests of judicial economy favor addressing the issue on direct appeal rather than requiring defendant to raise it in a separate postconviction petition." *Cregan*, 2014 IL 113600, ¶ 18. In accordance with those interests, we will review defendant's arguments, which implicate his constitutional right to confront witnesses against him.

¶ 24 As noted above, defendant argues that we should reject the surveillance location privilege as a matter of law because it offends his right to confrontation. He maintains that the Illinois Supreme Court has never approved of the privilege's existence, points to Delaware and

Washington as two states that have refused to recognize such a privilege, and asserts that Illinois courts "have struggled to find a workable method to measure when the privilege should be allowed."

¶ 25    Criminal defendants have a constitutional right to confront witnesses against them, which includes the right to cross-examination. See U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *Crawford v. Washington*, 541 U.S. 36, 54 (2004). However, it is well-settled that a court should consider a constitutional question only where it is essential to the disposition of a case, that is, where the case cannot be considered on other grounds. *People v. White*, 2011 IL 109689, ¶ 144. Accordingly, we will look first to defendant's nonconstitutional claim: that the trial court erred in applying the surveillance location privilege and allowing the State to keep the officer's surveillance location secret at trial.

¶ 26    Illinois courts have recognized a qualified privilege regarding the disclosure of secret surveillance locations. *People v. Britton*, 2012 IL App (1st) 102322, ¶ 26. This privilege was first recognized in *People v. Criss*, 294 Ill. App. 3d 276 (1998), in which the Fourth District held that in certain circumstances, surveillance officers are not required to disclose their exact surveillance locations on cross-examination. The court relied on the rationale behind the privilege protecting law enforcement informants, and held that "[t]he State may refuse to disclose the identity of law enforcement informants, so long as the nondisclosure will not deny an accused his constitutional rights." *Id.* at 280.

¶ 27    The facts in *Criss* were as follows. The defendant was charged with unlawful possession with intent to deliver a controlled substance. *Id.* at 277. At a hearing on the defendant's motion to suppress, two officers testified that they observed the defendant from two separate concealed locations, as he interacted with several individuals on the porch of a residence. *Id.* The officers described the suspicious behavior of the defendant and the individuals, including that the defendant was heard asking one of the individuals if he was a police officer, and said that the defendant and the other individuals were seen looking in various directions on several occasions during the interactions. *Id.* After the individuals left, officers stopped two of the vehicles and found cannabis in one of the vehicles and crack pipes in both. *Id.* at 279. The defendant was arrested on the porch of the residence and found with crack cocaine in his coat pocket. *Id.* at 277. The trial court denied the defendant's motion to suppress, and the defendant was found guilty after a bench trial. *Id.* at 279.

¶ 28    In affirming the trial court's judgment, the appellate court found "[p]articularly important" one officer's testimony "that he saw defendant arrested immediately after he saw defendant's last transaction ***. Defendant did not go inside or leave [the officer's] sight from the time of the transaction to the time of his arrest." *Id.* at 281. The Fourth District found no reason to believe that the officers' testimonies were not credible and concluded that the "exact location of the surveillance would not have cast additional doubt on the officers' version of events or changed the finding of probable cause." *Id.* at 281-82. The court thus found that the trial court did not abuse its discretion or violate the defendant's constitutional right. *Id.* at 282.

¶ 29    Later, in *People v. Knight*, 323 Ill. App. 3d 1117, 1126 (2001), the First District Appellate Court considered the surveillance privilege in the context of a trial. At the defendant's trial, an officer testified that he and his partner were conducting narcotics surveillance in a concealed location somewhere in the vicinity of 2910 West Fillmore in Chicago, Illinois. *Id.* at 1119. The officer testified that he saw defendant standing on the sidewalk in front of that address when a van pulled up to him. *Id.* The passenger in the van gave the defendant an unknown amount of

money, and the defendant turned around and walked toward a nearby flower pot where he reached in and pulled out a brown paper bag. *Id.* at 1119-20. The officer claimed that the defendant removed an object from inside the bag, walked back to the passenger side of the van, and gave the object to the passenger. *Id.* at 1120. The van then drove away, and the officer and his partner walked back to their car and drove to 2910 West Fillmore. *Id.* The officer admitted that he lost sight of the man who tendered the object to the passenger of the van for about one to two minutes during this time. *Id.* The officer and his partner exited their vehicle at the address; removed a brown paper bag from the flower pot, which was found to contain 125 smaller bags of crack cocaine; and arrested defendant. *Id.* No money or contraband was recovered from the defendant. *Id.*

¶ 30    After the State rested, the defendant presented his own testimony and the testimony of two other individuals. All three maintained that the defendant had just finished helping unload a church van in the area when he was arrested by the officers. *Id.* at 1120-21. Another man, who was wearing a jacket similar to the one the defendant was wearing, was selling drugs nearby. *Id.* The defendant was convicted and sentenced for delivery of a controlled substance. On appeal, the defendant contended that the trial court improperly precluded him from cross-examining the officer regarding his exact point of surveillance. *Id.* at 1121.

¶ 31    The court in *Knight* found that a qualified privilege existed for the disclosure of a surveillance location at trial, but held that "the surveillance privilege should be treated differently when raised at a suppression hearing as opposed to when it is raised at a trial." *Id.* at 1126. It noted that the court in *Criss* had found no reason to doubt the officer's credibility, whereas the officer's testimony in *Knight* was uncorroborated, and "questions [were] raised regarding [the officer's] ability to observe." *Id.* at 1124, 1128. It continued:

> "Where an officer's testimony is uncorroborated, like in the case at bar, the application of the privilege will severely hamper the defendant's ability to cross-examine the officer on the key factual issues. The only instances in which nondisclosure would positively not be necessary is where 'no question is raised about a surveillance officer's ability to observe or where a contemporaneous videotape provides the relevant evidence.' " *Id.* at 1128 (quoting *State v. Reed*, 6 P.3d 43, 49 (Wash. Ct. App. 2000)).

¶ 32    The court thus reversed defendant's conviction, finding that the defendant had been "deprived of the opportunity to cast doubt upon [the officer's] testimony and that the denial of this right constitutes prejudicial error," and remanded the case for further proceedings. *Id.*

¶ 33    Although several Illinois appellate courts have considered the surveillance location privilege in the years following *Criss* and *Knight*, the supreme court has never confronted this issue.

¶ 34    It is well established by *Criss* and its progeny that whether disclosure is required is determined on a case-by-case basis. *Id.* at 1127 (citing *Criss*, 294 Ill. App. 3d at 281). A trial court must balance the public interest in keeping the location secret against the defendant's interest in preparing a defense. *Id.* The more important a State's witness is to the State's case, the more important the defendant's right to cross-examination concerning the surveillance location becomes. *Id.* at 1128. Where the State's case depends almost exclusively on one police officer's testimony, disclosure must "almost always" be required. *Id.* In contrast, where there is no question about the surveillance officer's ability to observe, or where evidence appears on a contemporaneous video recording, disclosure would not be required. *Id.*

¶ 35    The State bears the initial burden of proof in demonstrating that the surveillance privilege should apply in a given case. *People v. Price*, 404 Ill. App. 3d 324, 331 (2010). The State carries this burden of proof by presenting evidence to the trial "court that the surveillance location was either (1) on private property with the permission of the owner, or (2) in a location that is useful and whose utility would be compromised by disclosure." *Id.* at 332. In order to evaluate whether the privilege applies, the trial court should hold an *in camera* hearing, outside the presence of the defendant and defense counsel, in which the State's witness must reveal the surveillance location and make a preliminary showing that disclosure of the location would harm the public interest. *Knight*, 323 Ill. App. 3d at 1127. The trial court should then weigh the defendant's need for the surveillance location against the public's interest in nondisclosure. *Id.* The factors the court should consider regarding the public interest in nondisclosure are the crime charged, the possible defenses, and the potential significance of the privileged information. *Id.*

¶ 36    If the State carries its burden at the *in camera* hearing, the burden of persuasion shifts to the defendant to overcome the privilege. *Price*, 404 Ill. App. 3d at 332. "A trial court has more discretion in declining to order the disclosure of an informant's identity during a preliminary hearing than it does at trial." *Id.* In the context of a pretrial hearing, the defendant must make a " 'strong showing that the disclosure of the location is material or necessary to his defense and that his need for the information outweighs the public's interest in keeping the location secret' " in order to compel disclosure. *Id.* (quoting *Criss*, 294 Ill. App. 3d at 281). However, where the State seeks to invoke the privilege in the trial context, due process requires that at trial the defendant need only show that the location is "relevant and helpful to the defense of an accused, or is essential to the fair determination of a cause" in order to overcome the privilege. (Internal quotation marks omitted.) *Id.* at 332-33.

¶ 37    In the instant case, the trial court held an *in camera* hearing with Officer Basile, who was one of two enforcement officers on the narcotics team, based on the State's request to invoke the surveillance location privilege at trial. The hearing was held off the record, and so far as we can tell, was not transcribed.

¶ 38    Illinois Supreme Court Rule 415, which regulates discovery, provides as follows with regard to transcription of *in camera* proceedings:

> "(f) *In Camera Proceedings*. Upon request of any person, the court may permit any showing of cause for denial or regulation of disclosures, or portion of such showing, to be made *in camera*. A record shall be made of such proceedings. If the court enters an order granting relief following a showing *in camera*, the entire record of such showing shall be sealed, impounded, and preserved in the records of the court, to be made available to the reviewing court in the event of an appeal." (Emphasis added.) Ill. S. Ct. R. 415(f) (eff. Oct. 1, 1971).

Our supreme court has examined Rule 415(f) in two cases, *People v. Coates*, 109 Ill. 2d 431 (1985), and *People v. Deleon*, 227 Ill. 2d 322 (2008), neither of which involve the surveillance location privilege.

¶ 39    In *Coates*, the defendant was alleged to have taken pornographic photographs of his wife's nine-year-old daughter. *Coates*, 109 Ill. 2d at 434-35. The defendant sought to subpoena Department of Children and Family Services (DCFS) records concerning his wife so that he could use them to impeach her testimony. *Id.* at 436. It was his theory that his wife had a history of problems with her children, which included child neglect and unfounded claims of

sexual abuse by various boyfriends and husbands. *Id.* At a hearing, DCFS authorities argued that the records were confidential and should not be disclosed to defense counsel. *Id.* The circuit court conducted an *in camera* inspection of the records without either defense counsel or the State's Attorney present, after which it permitted the defendant to use certain portions of the DCFS documents for impeachment purposes. *Id.* at 437. On appeal, the defendant argued, *inter alia*, that the trial court erred in failing to comply with Rule 415(f) in that it made no record of the *in camera* proceedings and failed to seal, impound, and preserve the records involved. *Id.* at 438. Our supreme court rejected this argument perfunctorily, stating, "The record fails to show that defendant requested any such action, and under the circumstances, there is nothing before us for review." *Id.*

¶ 40    In *Deleon*, the defendant was convicted of first degree murder and attempted first degree murder. *Deleon*, 227 Ill. 2d at 324. He was sentenced to a mandatory life term for the first degree murder and a consecutive 30-year term for the attempted first degree murder. *Id.* After filing a direct appeal, a postconviction petition, and an appeal from the petition's summary dismissal, the defendant's case was remanded for resentencing. *Id.* at 324-25. On remand, defense counsel subpoenaed the defendant's records from the Illinois Department of Corrections (IDOC), in hopes of ascertaining new mitigation evidence. *Id.* at 327. Because the Unified Code of Corrections specifies that such records " 'shall be confidential,' " the trial court examined the defendant's IDOC file *in camera*. *Id.* at 328 (quoting 730 ILCS 5/3-5-1(b) (West 1996)). Following the examination, the trial court indicated that the only " 'positive part' " of the documents in the file was paperwork showing the defendant had passed his G.E.D. test. *Id.* The trial court offered to make that single page available to defense counsel, and counsel accepted. *Id.* Following the resentencing hearing, the trial court imposed a 100-year extended-term sentence for the first degree murder and again imposed a consecutive 30-year sentence for the attempted first degree murder. *Id.* at 324-25, 329-30. On appeal, the defendant argued, among other things, that the trial court erred by not allowing defense counsel to examine the nonconfidential portions of his IDOC records. *Id.* at 330. The defendant also filed a motion asking the appellate court to conduct an independent review of the defendant's IDOC file " 'to ascertain the correctness of the trial court's ruling regarding the existence of mitigation evidence.' " *Id.* The defendant acknowledged in the motion that because the IDOC file was " 'in the hands of' " the IDOC, he could not obtain it and have it certified as a supplemental record. *Id.* The appellate court denied the motion and affirmed the defendant's convictions and sentences. *Id.*

¶ 41    In the Illinois Supreme Court, the defendant argued, as relevant here, that the appellate court erred in refusing to conduct an independent review of his IDOC file and " 'ascertain the correctness of the trial court's ruling regarding the existence of mitigation evidence.' " *Id.* at 340. The defendant asked the supreme court to conduct its own review of the IDOC records and remand the cause for a new sentencing hearing if it determined that the file contained additional potentially mitigating evidence. *Id.* at 340-41. The supreme court rejected the defendant's argument. *Id.* at 341-42. In doing so, the supreme court stated that the "fatal problem" with the defendant's argument was that the IDOC file was not part of the record on appeal and therefore, the appellate court had nothing to review. *Id.* at 341. The State directed the supreme court's attention to Rule 415(f) and argued that the defendant—having failed to ensure that the IDOC file was sealed, impounded, and preserved in the records of the court—had waived any right to review of the trial court's reading of that file. *Id.* The defendant

responded that nothing in Rule 415(f)'s language placed the burden on him to assure compliance with the outlined procedure, and asserted that since only the trial court had access to IDOC file, it was the trial court's burden to comply with the rule. *Id.*

¶ 42    The *Deleon* court ruled that the defendant's argument was precluded by its decision in *Coates*. *Id.* at 341-42. Specifically, the *Deleon* court held, "contrary to defendant's argument, the burden 'to assure compliance with this procedure' *does* rest with the complaining party, at least in the first instance. And absent a request for such compliance, any deficiency in the record will be attributable to that party." (Emphasis in original.) *Id.* at 342.

¶ 43    We find the instant case distinguishable from *Coates* and *Deleon*. In both of those cases, it was the defendant who sought disclosure of confidential files. See 730 ILCS 5/3-5-1(b) (West 1996) (IDOC records "shall be confidential"); 89 Ill. Adm. Code 431.40, amended at 19 Ill. Reg. 17082 (eff. Dec. 15, 1995) (addressing confidentiality of personal information of persons served by DCFS); 89 Ill. Adm. Code 431.90, amended at 32 Ill. Reg. 7088 (eff. May 1, 2008) (same). As such, it seems appropriate to us that our supreme court placed the burden of creating a record of the *in camera* inspections of those files on the defendants, as the moving parties. Here, in contrast, defendant is not seeking disclosure of confidential written records. Rather, the State is claiming a privilege in order to keep secret surveillance information that would ordinarily be discoverable.

¶ 44    Our case law is consistent that when the surveillance location privilege is invoked, the State bears the initial burden of proof that the privilege should be applied. *People v. Reed*, 2013 IL App (1st) 113465, ¶ 19; *Britton*, 2012 IL App (1st) 102322, ¶¶ 24, 25; *Price*, 404 Ill. App. 3d at 331. The State carries its burden of proof by disclosing the surveillance location *in camera* and presenting evidence that the surveillance location was either on private property with the permission of the owner or in a useful location that would be compromised by disclosure. *Reed*, 2013 IL App (1st) 113465, ¶¶ 19, 21; *Britton*, 2012 IL App (1st) 102322, ¶¶ 24, 25; *Price*, 404 Ill. App. 3d at 332. Given that it is the State that bears the burden of proof at the *in camera* hearing, we cannot reconcile requiring defendant—the opposing party—with the burden of ensuring a transcript of that proceeding be made and sealed.

¶ 45    We are mindful that this court came to a contrary conclusion regarding the burden of transcription in *Reed*, 2013 IL App (1st) 113465, ¶ 21, a case involving the surveillance location privilege where the record did not include a transcript of the *in camera* hearing. The *Reed* court did not reference Rule 415, but rather, cited *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984), for the proposition that it is the appellant's burden to provide a record adequate to support his claims of error, and that in the absence of an adequate record, all doubts must be resolved against the appellant and it must be presumed that the trial court's ruling had a sufficient legal and factual basis. *Reed*, 2013 IL App (1st) 113465, ¶ 21. In *Reed*, this court applied the principles of *Foutch* and presumed that the trial court heard sufficient information at the *in camera* hearing to sustain the State's burden that the surveillance location privilege applied. *Id.*

¶ 46    To the extent that *Reed* held that it is always the appellant's burden to ensure that a transcript of the *in camera* hearing is created, we disagree. We hold that where, as here, the State requests the invocation of the surveillance location privilege, the trial court should not only hold an *in camera* hearing, but should also ensure that a transcript of that hearing is created, and preserved for appellate review. Ensuring that the *in camera* hearing is transcribed should be, at most, a minor inconvenience for the trial court, since criminal proceedings are

routinely transcribed. See Ill. S. Ct. R. 608 (eff. Apr. 8, 2013). Here, we have no record of what evidence was presented at the *in camera* hearing and are unable to assess whether the State met its initial burden of proof. Had a transcript been made and sealed, we would be able to conduct meaningful review of the *in camera* proceedings and actually determine whether the State met its initial burden, rather than rely on a presumption.

¶ 47 Even assuming the trial court was correct that the State met its initial burden at the *in camera* hearing, the trial court did not proceed from that point to determine whether defendant had overcome the privilege. As noted above, following an *in camera* hearing, a trial court should weigh the defendant's need for the surveillance location against the public's interest in nondisclosure. *Knight*, 323 Ill. App. 3d at 1127; *Price*, 404 Ill. App. 3d at 333. Here, after the trial court found that the State had made a preliminary showing that disclosure would harm the public interest, defense counsel addressed the court, stating that she understood the exact location would not be given. The court responded, "In some cases it can, but I don't think it's appropriate in this instance." When defense counsel then noted that other courts have allowed disclosure of information regarding distance, direction, and elevation, the trial court replied that counsel would be able to cross-examine regarding distance, obstructions, and visual aids, "[B]ut I'm not going to disclose—for me to disclose further, given the location and the fact that this is a vacant lot, I'm not going to disclose anything further than what you're entitled to on cross. That's my ruling."

¶ 48 These comments by the trial court reveal that it sustained the State's claim of privilege without determining whether the defense had overcome that claim. When the surveillance location privilege is invoked, a trial court must balance the public interest in keeping the location secret against the defendant's interest in preparing a defense. *Reed*, 2013 IL App (1st) 113465, ¶ 18. Although a trial court enjoys broad discretion to limit the scope of cross-examination, failing to conduct any balancing inquiry constitutes an abuse of that discretion. *Price*, 404 Ill. App. 3d at 333. Even where the State properly claims privilege, the trial court must still determine whether the defense has overcome the State's claim. *Id.* In *Price*, the trial court sustained the State's claim of privilege by saying only that it did not " 'require police officers to give up their surveillance spots.' " *Id.* Because the trial court in *Price* did not conduct a balancing inquiry into the validity of the privilege, this court found that the trial court abused its discretion in applying the privilege. *Id.* Here, as in *Price*, the trial court applied the privilege without making a determination as to whether defendant had overcome the State's claim. Accordingly, as in *Price*, we find that the trial court in the instant case abused its discretion in failing to consider factors that would have weighed in favor of disclosure.

¶ 49 Defendant argues that disclosure was warranted here because Officer Doherty's testimony concerning what he saw from his surveillance location was the linchpin of the State's case. We agree with this assessment, as the State did not present any additional occurrence witnesses, inculpatory statements, or contemporaneous video recordings. Moreover, although Officer Doherty reported that he saw defendant receive paper currency from three separate buyers and represented that he never lost sight of defendant, no money was recovered from defendant. This circumstance seriously calls into question Officer Doherty's ability to observe, and in turn, his account of events. Where a case turns almost exclusively on an officer's testimony, a defendant's need for location information is great and disclosure must almost always be ordered. *Knight*, 323 Ill. App. 3d at 1128. This is just such a case.

¶ 50    The instant case is not like *Criss*, *Reed*, or *Britton*, in which the courts found no evidence that seriously called into question the officer's ability to observe, or where money was recovered from the defendant's person, thus corroborating the surveillance officer's testimony regarding narcotics sales. *Criss*, 294 Ill. App. 3d at 281-82; *Reed*, 2013 IL App (1st) 113465, ¶ 23; *Britton*, 2012 IL App (1st) 102322, ¶ 12. Instead, the instant case more closely resembles *Knight* and *Price*, where this court found that the defendants had overcome the State's claim of privilege because the case rested solely on the surveillance officer's testimony. *Knight*, 323 Ill. App. 3d at 1127; *Price*, 404 Ill. App. 3d at 333. Here, where the State's case turned almost exclusively on Officer Doherty's testimony, and where Officer Doherty's ability to observe was seriously called into question, we find that the trial court abused its discretion in applying the surveillance location privilege and depriving defendant of the opportunity to cast doubt upon Officer Doherty's testimony.

¶ 51    Given our disposition, we need not address the constitutionality of the surveillance location privilege or defendant's contention that that the mittimus should be corrected.

¶ 52    For the reasons explained above, we reverse defendant's conviction and remand for a new trial. We vacate the trial court's order allowing the State to invoke the surveillance location privilege, in this case and under these particular facts. On remand, if the State wishes to proceed, it must either disclose Officer Doherty's surveillance location or proceed without his testimony.

¶ 53    Reversed and remanded.