SECOND DIVISION
AUGUST 31, 2010

No. 1-07-2223

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 00 CR 15391-01 |
| | ) | |
| ROBERT PRICE, | ) | Honorable |
| | ) | Dennis A. Dernbach |
| Defendant-Appellant. | ) | Judge Presiding |

JUSTICE THEIS delivered the opinion of the court:

Following a bench trial, defendant Robert Price appeals his conviction in the circuit court of Cook County for possession of a controlled substance with intent to deliver within 1,000 feet of a park. On appeal, Price argues that the trial court violated his constitutional rights by precluding cross-examination regarding a police officer's surveillance location, and that the trial court erroneously included a three-year term of mandatory supervised release as part of Price's sentence. For the following reasons, we reverse the judgment of the trial court and remand for a new trial.

## BACKGROUND

Robert Price was charged with two counts of possession of a controlled substance with intent to deliver within 1,000 feet of a church or park, one count of possession of a controlled substance with intent to deliver, and one count of possession of a controlled substance. All of these charges arose from events that transpired on May 19, 2000.

At the bench trial, the State presented the testimony of Officer Paris George of the Chicago Police Department. Officer George testified that on May 19, 2000, he and his partner, Officer Bruce Sobol, conducted a drug surveillance operation near 500 North Lawler in Chicago. At around 7:30 p.m., he saw an individual whom he identified as Robert Price standing alone on the corner of 500 North Lawler. On three separate occasions over the course of about 10 minutes, unknown black males approached Price and handed him an unknown amount of United States currency. Price would then reach into a small paper bag that he was holding in one hand and retrieve a small unknown object, which he would give to the unknown man. Each of the three

transactions lasted about 45 seconds.

After the third unknown individual departed, Officer George and his partner left their surveillance location and approached Price in their unmarked vehicle. As they approached, Officer George noticed that Price was walking with an unknown black female. Officer George stated that when Price noticed the officers approaching in their vehicle, Price placed the brown paper bag that he had been holding into the woman's outer jacket pocket. After Officer George exited the vehicle, he told the unknown woman that he had just seen Price place an item into her jacket pocket. The woman responded, "Whatever it is, take it out." Officer George recovered the paper bag from the woman's jacket pocket and found that it contained seven red and clear plastic bags each containing what Officer George believed to be crack cocaine. Officer George then placed Price under arrest. During a search of Price's person, Officer George stated that he discovered a tinfoil packet containing what he believed to be heroin from Price's knit cap.

On cross-examination, Officer George testified that it was dark when he set up his surveillance point, that he and his partner were at the same surveillance location, that the surveillance point was about 60 feet away from the corner of 500 North Lawler, and that there was nothing obstructing his view of the corner. However, the State objected when defense counsel attempted to inquire further into Officer George's location. The State did not offer any basis for its objection, and the trial court sustained the objection without stating a basis for the ruling. After several more objections by the State to defense counsel's attempts to establish Officer George's location, the trial court made the following statement:

"THE COURT: Sustained. I do not allow attorneys — I don't require

police officers to give up their surveillance spots because often times they were in

citizens [*sic*] homes that are given access by the citizens and I'm not going to

make them known to people who may or may not be involved in the transactions.

So I will not have the police officer answer that question."

After some further discussion, the trial court upheld its ruling and precluded the defense from

inquiring into the surveillance location.

Officer George went on to testify that he could not recall a description of any of the men other than their race, and that neither he nor his partner detained or questioned any of the men. Officer George also testified that, despite the fact that he had recovered the bag containing narcotics from the woman, neither he nor his partner had questioned the woman or obtained her name and address as a witness. Finally, Officer George mentioned that he had previously encountered Price at some point before the date of Price's arrest.

Officer George was the sole witness to testify on behalf of the State. After Officer

George was excused, the parties stipulated that the items recovered were in fact cocaine and

heroin and that the transactions occurred within 1,000 feet of a church and a park. The State then rested.

Price testified on his own behalf as the sole witness for the defense. Price testified that just prior to his arrest he was visiting 506 North Lawler and that at about 7:15 p.m. he was walking back to his car. When he turned the corner, he saw the woman that Officer George had mentioned standing on the sidewalk. Price identified her by name and as someone whom he knew to be a local drug dealer. Immediately after Price turned the corner, Officer George and his partner pulled up in their unmarked police car next to the woman, got out, and began talking to her. As Price walked by, Officer George stopped and arrested him, but let the woman go free. Price denied selling narcotics and denied that Officer George recovered any narcotics from his person.

After the defense rested, the State presented a stipulation by the parties for two prior convictions of Price on felony charges, but declined to present any rebuttal witnesses. The trial court found Price guilty on all counts and merged the charges into count I, which was possession of less than one gram of cocaine with intent to deliver within 1000 feet of a park, a Class 1 felony. Following the trial, Price filed a motion for a new trial that alleged general defects in the trial but no specific errors, which the trial court denied. At sentencing, the trial court found that Price qualified for mandatory Class X sentencing based on his record of prior convictions. On March 11, 2002, the trial court sentenced Price to 10 years in the Illinois Department of Corrections, with an additional 3 years of mandatory supervised release.

Price did not file a notice of appeal following sentencing by the trial court. On October 9, 2003, Price mailed a motion to this court asking leave to file a late notice of appeal, alleging that his counsel was ineffective in not filing a timely notice of appeal. This court granted the motion on October 31, 2003. On January 27, 2005, we vacated the previous order and dismissed the appeal due to lack of jurisdiction. Price then filed a petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 et seq. (West 2008)), alleging denial of his right to an appeal due to ineffective assistance of counsel. The circuit court granted Price's petition on August 1, 2007, and ordered that Price be allowed to file a late notice of appeal. Price filed a notice of appeal on August 7, 2007.

ANALYSIS

Price raises two issues on appeal. First, Price argues that the trial court violated his Sixth Amendment rights by precluding defense counsel from inquiring into Officer George's surveillance location. Second, Price argues that the trial court erroneously included three years of mandatory supervised release as part of his sentence.

We initially consider the threshold issue of our jurisdiction over Price's appeal. This court has jurisdiction over appeals from criminal cases not involving a death sentence when the

defendant files a notice of appeal with the clerk of the trial court within 30 days of the entry of a final judgment or disposition of a posttrial motion. See 134 Ill. 2d Rs. 603, 606(a), (b). Notice of appeal may be filed within 30 days of the expiration of the original appeal period on a showing of reasonable excuse, or within 6 months of judgment on a showing of "merit to the appeal and that the failure to file a notice of appeal on time was not due to the appellant's culpable negligence." 134 Ill. 2d R. 606(c). Failure to timely file a notice of appeal deprives this court of jurisdiction over an appeal. See People v. Baskin, 213 Ill. App. 3d 477, 485 (1991). Price was sentenced on March 11, 2002, but did not file a notice of appeal until October 9, 2003. This delay is beyond the provisions of Rule 606(c), and the 2003 motion was therefore untimely.

In 2007, however, Price successfully petitioned the circuit court for relief under the Post-Conviction Hearing Act on the ground that his counsel's failure to file a notice of appeal after being directed to do so violated Price's constitutional right to effective assistance of counsel. The Illinois Supreme Court has held that "when a post-conviction petitioner demonstrates that defense counsel was ineffective for failing to file a notice of appeal, the trial court may allow the petitioner leave to file a late notice of appeal." People v. Ross, 229 Ill. 2d 255, 271 (2008). Because the circuit court granted Price permission to file a late notice of appeal pursuant to his successful postconviction petition, Price's August 7, 2007 notice of appeal was timely filed. We therefore have jurisdiction to hear Price's appeal.

We next consider whether Price forfeited review of his arguments on appeal by failing to properly preserve them. It is well settled in Illinois that "to preserve a claim of error for review, a defendant must object to the error at trial and raise the error in a motion before the trial court." People v. McLaurin, 235 Ill. 2d 478, 485 (2009). Although Price did file a motion for a new trial in this case, the motion did not allege that the trial court's rulings regarding the surveillance point were erroneous. Price concedes on appeal that his trial counsel did not properly preserve this issue for review. Consequently, we find that Price has forfeited this claim on appeal. Despite his forfeiture, Price argues that we may review the issue under the doctrine of plain error, which allows a court to consider a claim of error that has been forfeited, but only in limited circumstances. See People v. Averett, 237 Ill. 2d 1, 18 (2010). In order to gain review of the issue, a defendant must first show that a "clear or obvious error" occurred during the trial. People v. Piatkowski, 225 Ill. 2d 551, 565 (2007). The defendant must then show that either (1) " 'the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant,' " or (2) the " 'error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process.' " Averett, 237 Ill. 2d at 18,

4

quoting Piatkowski, 225 Ill. 2d at 565.

The first step in our analysis is to determine whether the trial court erred when it prevented Price's trial counsel from cross-examining Officer George about his surveillance location. A criminal defendant has a constitutional right to confront the witnesses against him, which includes the right to cross-examination. See U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §8; Crawford v. Washington, 541 U.S. 36, 54, 158 L. Ed. 2d 177, 194-95, 124 S. Ct. 1354, 1365 (2004). The right to cross-examination is not absolute, and the trial court is given broad discretion to determine the extent of cross-examination at trial. See People v. Enis, 139 Ill. 2d 264, 295 (1990). A trial court's restriction of cross-examination will not be reversed absent an abuse of discretion. See Enis, 139 Ill. 2d at 295. In response to Price's arguments, the State asserts that the trial court correctly limited cross-examination based on the "surveillance location privilege."

In order to determine whether the trial court properly limited cross-examination, we review the legal principles that govern the application of the surveillance location privilege. The surveillance privilege is a common-law privilege that is based on and evolved from the related "informant's privilege," which is widely recognized in federal and state courts and has been codified in Illinois. See 735 ILCS 5/8-802.3 (West 2008). The surveillance location privilege was first recognized in Illinois in People v. Criss, 294 Ill. App. 3d 276 (4th Dist. 1998). In Criss, the Fourth District found that numerous other jurisdictions recognized the surveillance location privilege as an extension of the informant's privilege, and held that "a qualified privilege exists for the disclosure of secret surveillance locations" during pretrial hearings. Criss, 294 Ill. App. 3d at 281. The court explicitly based its holding on the analogous policy justifications for the surveillance and informant's privileges. See Criss, 294 Ill. App. 3d at 281.

The purpose of the informant's privilege, and consequently of the surveillance privilege, is twofold: to protect sources from retaliation and to encourage their continuing cooperation with law enforcement. See, e.g., People v. Mack, 12 Ill. 2d 151, 164 (1957), quoting Roviaro v. United States, 353 U.S. 53, 59, 1 L. Ed. 2d 639, 644, 77 S. Ct. 623, 627 (1953); cf. United States v. Green, 670 F.2d 1148, 1155 (D.C. Cir. 1981), cited in Criss, 294 Ill. App. at 280. However, these public interests must be balanced against a defendant's constitutional right to a fair trial, making the informant's privilege a qualified privilege, not an absolute privilege.

The seminal decision on the interplay between the informant's privilege and a criminal defendant's constitutional rights is Roviaro v. United States, 353 U.S. 53, 59, 1 L. Ed. 2d 639, 644, 77 S. Ct. 623, 627 (1953). See People v. Mack, 12 Ill. 2d 151, 164 (1957) (examining and

incorporating Roviaro). The U.S. Supreme Court held that "[w]here the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to the fair determination of a cause, the privilege must give way." Roviaro, 353 U.S. at 60-61, 1 L. Ed. 2d at 645, 77 S. Ct. at 628; see Mack, 12 Ill. 2d at 165. In order to determine whether the privilege should apply in a given case, courts must balance the "public interest in protecting the flow of information against the individual's right to prepare his defense." Roviaro, 353 U.S. at 62, 1 L. Ed. 2d at 645, 77 S. Ct. at 628; accord People v. Chaney, 63 Ill. 2d 216, 225 (1976). Among the factors that the court must balance are "the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Roviaro, 353 U.S. at 62, 1 L. Ed. 2d at 646, 77 S. Ct. at 629; see Chaney, 63 Ill. 2d at 225-26 (collecting cases).

While Criss recognized the surveillance location privilege in the context of a pretrial motion to suppress evidence, the privilege was not recognized in the trial context until People v. Knight, 323 Ill. App. 3d 1117 (2001). In Knight, we recognized that a qualified surveillance privilege does exist at trial, but held that "at trial disclosure of a surveillance point will be compelled if the allegedly privileged information is material on the issue of guilt [or innocence]." Knight, 323 Ill. App. 3d at 1127. We followed Criss and adopted the procedural tests governing disclosure from the line of cases concerning the informant's privilege. However, we also noted that, while a qualified privilege is available at trial, there is a presumption in favor of disclosure when the case against the defendant is based primarily on eyewitness testimony. See Knight, 323 Ill. App. 3d at 1128 ("[W]here a defendant's need for the location information is so great that the case against him turns almost exclusively on an officer's testimony, disclosure must almost always be ordered").

Our review of our case law confirms that the privilege may be asserted at trial to prevent the disclosure of a surveillance point, but also that the privilege is limited by procedural safeguards that protect a criminal defendant's constitutional rights. When the State invokes the informant's privilege, "it is required to submit those grounds to the trial court so it can determine the legitimacy of the assertion." People v. Pearson, 210 Ill. App. 3d 1079, 1084 (1991). Analogously, the State bears the initial burden of proof and must demonstrate that the surveillance privilege should apply in a given case. Like the informant's privilege on which it is based, the surveillance privilege only applies where its underlying purposes are served. Cf. Roviaro, 353 U.S. at 60, 1 L. Ed. 2d at 644-45, 77 S. Ct. at 627-28; People v. Avery, 61 Ill. App. 3d 327, 332 (1978). The State therefore carries its burden of proof by presenting evidence to the

court that the surveillance location was either (1) on private property with the permission of the owner, or (2) in a location that is useful and whose utility would be compromised by disclosure. See Criss, 294 Ill. App. 3d at 280-81; cf. Pearson, 210 Ill. App. 3d at 1084.

Once the State has carried its burden of proof, the defense bears the burden of persuasion and can overcome the privilege by showing that the surveillance location "is relevant and helpful to the defense" or is "essential to the fair determination of a cause." Roviaro, 353 U.S. at 60-61, 1 L. Ed. 2d at 645, 77 S. Ct. at 628. The trial court must balance the public interests underlying the surveillance privilege against the need of the defendant for disclosure in order to defend himself at trial, based on the specific facts of each individual case. Factors include but are not limited to "the crime charged, the possible defenses, the possible significance of the [witness's] testimony, and other relevant factors." Roviaro, 353 U.S. at 62, 1 L. Ed. 2d at 646, 77 S. Ct. at 629; see Knight, 323 Ill. App. 3d at 1127. To aid in making this determination, the trial court may require the surveillance officer to disclose the surveillance location in camera outside of the presence of both the State and the defense. See Knight, 323 Ill. App. 3d at 1127-28; People v. Stokes, 392 Ill. App. 3d 335, 339-40 (2009); cf. Green, 670 F.2d at 1156.

Our cases since Knight have largely followed these principles, but there is some ambiguity regarding the burden of persuasion that the defense must carry in order to compel disclosure of the surveillance location at trial. See People v. Quinn, 332 Ill. App. 3d 40 (2002); People v. Bell, 373 Ill. App. 3d 811 (2007); People v. Stokes, 392 Ill. App. 3d 335 (2009). A trial court has more discretion in declining to order the disclosure of an informant's identity during a preliminary hearing than it does at trial. See McCray v. Illinois, 386 U.S. 300, 310, 18 L. Ed. 2d 62, 70, 87 S. Ct. 1056, 1062 (1967); People v. Vauzanges, 158 Ill. 2d 509, 520 (1994);

People v. Williams, 38 Ill. 2d 150, 153 (1967). Likewise, "the surveillance privilege should be treated differently when raised at a suppression hearing as opposed to when it is raised at trial." Knight, 323 Ill. App. 3d at 1126. At a pretrial hearing, therefore, the defendant must make a "strong showing that the disclosure of the location is material or necessary to his defense and that his need for the information outweighs the public's interest in keeping the location secret" in order to compel disclosure. Criss, 294 Ill. App. 3d at 281. In contrast, due process requires that at trial the defendant need only show that the location is "relevant and helpful to the defense of an accused, or is essential to the fair determination of a cause" in order to overcome the privilege. Roviaro, 353 U.S. at 60-61, 1 L. Ed. 2d at 645, 77 S. Ct. at 628; accord Vauzanges, 158 Ill. 2d at 520; Williams, 38 Ill. 2d at 153; see Knight, 323 Ill. App. 3d at 1126-27.

Applying these principles to the case at bar, we find that the trial court did not properly apply the surveillance location privilege. When Price's trial counsel attempted to cross-examine Officer George about his surveillance point, the trial court upheld the State's objection without first determining whether the State had met its initial burden of establishing the privilege. The record demonstrates that the State did not establish either of the two bases on which a claim of privilege could rest. Consequently, the State failed to carry its initial burden in claiming the surveillance privilege, and it was error for the trial court to recognize the privilege.

Even if the State had properly claimed privilege, the trial court did not determine whether the defense had overcome the State's claim. While a trial court has discretion in balancing the interests of the State and the defendant in order to determine whether the privilege has been overcome, the trial court here did not consider the issue at all. Instead, the trial court sustained the State's claim of privilege by saying only that it does not "require police officers to give up their surveillance spots." Because the trial court did not conduct a balancing inquiry into the validity of the surveillance location privilege in this case, it was error for the trial court to sustain the State's objection to the defense's questions. As a result, we hold that the trial court abused its discretion by limiting Price's cross-examination of Officer George and precluding inquiry into his surveillance location on the basis of the surveillance location privilege.

Having determined that the trial court erred, we must still determine whether Price has met his burden under the plain error doctrine. To warrant reversal under the doctrine, a defendant must show that either (1) the evidence was closely balanced, or (2) the error was so serious that it fundamentally affected the fairness of the trial. See Averett, 237 Ill. 2d at 18. In this case, Price's conviction rests solely on Officer George's testimony because the State did not present any inculpatory statements or physical evidence that tended to prove that Price possessed a controlled substance with intent to deliver. We must therefore determine based on the facts in the record whether Officer George's testimony was sufficiently reliable.

In deciding this issue, we look to the Illinois Supreme Court's decision in People v. Piatkowski, 225 Ill. 2d 551 (2007). See also People v. Herron, 215 Ill. 2d 167 (2005); People v. Gonzalez, 326 Ill. App. 3d 629 (2001). The court analyzed the reliability of the evidence that was presented by the two eyewitnesses through the factors enumerated in Neil v. Biggers, 409 U.S. 188, 199-200, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382 (1972), which include "(1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation." Piatkowski, 225 Ill. 2d at 567. The Supreme Court found that the evidence "did not overwhelmingly favor the State" and was therefore "sufficiently closely balanced so as to require a new trial" under the plain error doctrine. Piatkowski, 225 Ill. 2d at 568.

Regarding the first factor, Officer George testified that he observed the suspect from a distance of about 60 feet, at night, and without binoculars for about 10 minutes. However, the record is bare of any further details because of the trial court's limitation on cross-examination.

We find that the first factor does not greatly favor the State.

Turning to the second factor, Officer George testified that he was specifically on a surveillance mission that evening and was observing the corner of 500 North Lawler for about 10 minutes. There is no indication in the record of any particular level of attention that he may have paid to the corner during the course of his observations, but on cross-examination Officer George indicated that he did not see the unknown female arrive on the scene and he could not explain when she first appeared. We find that this factor weighs against the State.

The third factor weighs against the State. At the time of his observations, Officer George did not relay any description of the suspect to any of his fellow officers, and there is no record of a description in any contemporaneous reports that he may have made. Moreover, at trial Officer George could not recall a description of either the suspect or any of the unknown individuals who engaged in the transactions, other than their race.

In contrast, the fourth and fifth factors favor the State. Although Officer George did not testify to his level of certainty at the time of Price's arrest that Price was the individual whom Officer George had been observing, Officer George did testify that Price was previously known to him. Additionally, Officer George testified that the length of time between when he left his surveillance point after the last transaction and when he arrived at 500 N. Lawler was

approximately 30 seconds.

After considering the Neil factors, we cannot say that the evidence adduced at trial in this case overwhelmingly favors the State, and like the Illinois Supreme Court in Piatkowski, we therefore find that Price has met his burden to demonstrate that the evidence was closely balanced enough to warrant a new trial. In coming to this conclusion, we note that the trial court's limitation of cross-examination itself prevented a comprehensive assessment of the reliability of Officer George's eyewitness testimony because no adequate record was developed as to several of the Neil factors. We are also mindful of the Illinois Supreme Court's long-standing admonition that "when identification is in issue the defendant should be given considerable latitude on cross-examination of the identifying witness to test the identification, the means of observation, and the memory of the witness." People v. Struck, 29 Ill. 2d 310, 312 (1963), cited in Knight, 323 Ill. App. 3d at 1122. On the record we have before us, we hold that the evidence was closely balanced, and the trial court's error in precluding cross-examination based on the surveillance privilege consequently warrants a new trial.

CONCLUSION

For the reasons discussed above, we reverse the judgment of the trial court and remand this case for a new trial. We note that there is no double jeopardy bar to retrial in this case. We have thoroughly reviewed the evidence and find that it was sufficient to support a finding of guilty beyond a reasonable doubt. See People v. Olivera, 164 Ill. 2d 382, 393 (1995). Because we reverse the trial court's judgment of conviction, we do not reach Price's second argument on appeal that the trial court erroneously included three years of mandatory supervised release as part of his sentence.

Reversed and remanded for a new trial.

CUNNINGHAM, P.J., and HOFFMAN, J., concur.