# Illinois Official Reports

## Appellate Court

***People v. Jackson*, 2017 IL App (1st) 151779**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ARLANDUS JACKSON, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-15-1779 |
| Filed | November 16, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CR-11792; the Hon. Michael B. McHale, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Tomas G. Gonzalez, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Margaret M. Smith, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE BURKE delivered the judgment of the court, with opinion.<br>Justices McBride and Ellis concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a bench trial, defendant Arlandus Jackson was convicted of possession of a controlled substance with intent to deliver and sentenced to four years' imprisonment. On appeal, defendant contends that the trial court erred in conducting an *in camera* hearing on his pretrial motion to disclose the surveillance location from where a police officer allegedly observed him commit the offense and erred in finding that he was not entitled to disclosure of the surveillance location. For the reasons that follow, we reverse defendant's conviction and remand the matter for a new trial.

¶ 2                                    I. BACKGROUND

¶ 3    The police arrested defendant after an officer conducting undercover surveillance observed him engage in three suspected drug transactions. None of the alleged buyers were stopped. The State charged defendant with one count of possession of a controlled substance (less than one gram of heroin) with intent to deliver. 720 ILCS 570/401(d) (West 2012). In the State's pretrial answer to discovery, it stated that defendant had not been subject to electronic surveillance. Defendant subsequently filed a motion to compel disclosure of the police officer's surveillance location, arguing that disclosure was necessary because the State's case against him hinged on the ability of the officer to observe his alleged drug transactions. Defendant contended that disclosure was the only means to ensure that he could investigate the officer's ability to observe his alleged actions and effectively exercise his constitutional right to confrontation. The State did not file a written response to defendant's motion.

¶ 4    On October 8, 2014, after defendant's case was called, the trial court immediately held an *in camera* hearing with Chicago police officer John Frano and an assistant State's Attorney outside the presence of defendant and defense counsel. In the hearing, the assistant State's Attorney examined Frano, asking him several questions about the day in question, including some unrelated to his surveillance location. Frano generally discussed his surveillance location, including his approximate distance from defendant, whether his location was on an occupied or unoccupied property, and his ability to observe defendant from his location. Frano, however, did not reveal his exact surveillance point. The court also examined Frano, asking him several questions, but similarly did not ascertain his precise surveillance location.

¶ 5    At the conclusion of the hearing, still in the presence of only Frano and the assistant State's Attorney, the trial court indicated that it would deny defendant's motion "based on the officer's testimony" and would have the hearing transcribed and sealed.[1] Following the hearing, and in the presence of both parties, the court found that:

> "based on the testimony of the officer that there are public safety concerns involved here, and also that given the details of the number of officers present and the facts that were relayed, I do not feel that the defendant is required to know this information in order to fully be able to represent [his] interests at trial. I certainly will allow full cross-examination for distance, elevation, lighting, weather conditions, and any obstruction. So I don't feel the disclosure is necessary."

---

[1]The transcript is included in the record on appeal.

The court accordingly denied defendant's motion to compel disclosure, and his case proceeded to a bench trial.

¶ 6 At trial, the State presented the testimony of Frano as well as Chicago police officers Ivan Ramos and Marvin Bonnstetter. The evidence revealed that, on April 21, 2013, Frano was working with Ramos, Bonnstetter, and Officer Kevin Garcia on a drug investigation. Frano was the lone surveillance officer while Ramos, Bonnstetter, and Garcia were enforcement officers. Frano dressed in plainclothes and conducted surveillance on the 700 block of North Trumbull Avenue.

¶ 7 Frano testified that, at around 6:40 p.m., while it was getting dark outside, he observed a man, identified in court as defendant, standing on the sidewalk in front of a residence at 734 North Trumbull Avenue. Another man approached defendant, engaged him in a conversation and handed him an unknown amount of money. Defendant walked into a narrow gangway adjacent to the residence, proceeded toward the rear of the residence, reached down, and removed an item from the ground. He returned to the sidewalk in front of the residence and handed the man the item, who then left the area. Frano observed two more individuals engage in identical transactions with defendant. Based on these transactions, which Frano testified he had an unobstructed view of from approximately 50 to 100 feet away, he believed that defendant was selling drugs. Although Frano had binoculars, he did not "know exactly when [he] was using [them] for that particular situation." During Frano's cross-examination, defense counsel asked him if he was conducting surveillance from an "elevated" position, but the trial court sustained the State's objection on the basis of "the point of surveillance."

¶ 8 After witnessing the third suspected drug transaction, Frano called for Ramos to pick him up, left his surveillance post, and instructed Garcia and Bonnstetter to detain defendant. Frano lost sight of defendant for 30 to 40 seconds but eventually observed him being detained by Garcia and Bonnstetter approximately 150 feet north of 734 North Trumbull Avenue. Frano was certain that defendant was the same individual he had observed during his surveillance.

¶ 9 Bonnstetter testified that he detained defendant, who matched the description relayed to him by Frano of the individual he had observed during his surveillance. Meanwhile, Frano and Ramos went to the rear of the gangway adjacent to the residence at 734 North Trumbull Avenue. There, they both observed a white strip of tape with four tinfoil packets attached, each containing suspect heroin. Ramos recovered the packets. Bonnstetter subsequently arrested defendant and found $175 on him.

¶ 10 At the conclusion of the State's case, the parties stipulated that, if called as a witness, a forensic chemist at the Illinois State Police crime laboratory would have testified that the contents of one of the four tinfoil packets tested positive for heroin and weighed 0.1 gram.

¶ 11 Defendant did not testify or call any witnesses on his behalf.

¶ 12 During closing arguments, defense counsel argued that, because Frano observed the individual conducting the suspected drug transactions from 50 to 100 feet away at a time when it was getting dark outside, his ability to observe was "diminished." Counsel further highlighted that, after Frano left his surveillance post, he lost sight of the individual he saw engage in the transactions. Altogether, counsel contended there was reasonable doubt that defendant was the individual Frano observed during his surveillance.

¶ 13　　In rebuttal, the State contended that Frano positively identified defendant as the individual who conducted the transactions, and although Frano lost sight of defendant after he broke surveillance, he did so for a mere 30 seconds.

¶ 14　　The trial court ultimately found defendant guilty of possession of a controlled substance with intent to deliver, observing that Frano testified "very clear and detailed" about witnessing the three drug transactions involving defendant. Although the court acknowledged that Frano lost sight of defendant for 30 to 40 seconds, it did not find this "problematic" to the State's case. It additionally rejected any notion that Frano had a "diminished ability to observe" the transactions, instead finding that, based on his testimony, his view was "clear and unobstructed." Following defendant's unsuccessful motion for a new trial, the court sentenced him to four years' imprisonment. This appeal followed.

¶ 15　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 16　　Defendant contends that the trial court erred in denying his pretrial motion to compel disclosure of Officer Frano's surveillance location for two reasons. First, he argues the court improperly conducted an *in camera* hearing on the matter when it failed to ascertain Frano's exact surveillance location. Second, defendant argues that, because Frano's testimony was the linchpin of the State's case against him, the court erroneously ruled that his surveillance location was privileged.

¶ 17　　Following the parties' submission of their briefs, we directed them to address the issue of the *in camera* hearing being conducted in the presence of the State but not the defense. Both parties subsequently filed supplemental briefs on this issue.

¶ 18　　　　　　　　　　　　　　　　A. Forfeiture

¶ 19　　Initially, the State argues that defendant forfeited the issue for review. The State asserts that, while he raised the issue of the surveillance location privilege in a pretrial motion, he did not include a claim of error in his posttrial motion concerning "the court sustaining the people's objection to defense counsel's cross-examination of Officer Frano about whether the surveillance location was in an elevated position." It is well-settled that, in order to avoid forfeiting a claim of error for review, the defendant must either raise the issue in a pretrial motion or object at trial and also raise it in a posttrial motion. *People v. Boclair*, 129 Ill. 2d 458, 476 (1989). Here, the State's forfeiture argument is without merit, as defendant's contention on appeal directly concerns the trial court's denial of his pretrial motion to disclose Frano's surveillance location. And in defendant's posttrial motion, he argued "[i]t was error to deny [his] Motion to Disclose the Surveillance Point." Thus, defendant has preserved this issue for review. See *id.*

¶ 20　　Moreover, even if the State had argued that defendant forfeited his specific claim that, during the *in camera* hearing, the trial court improperly failed to ascertain Frano's exact surveillance location, we would likewise find such an argument meritless. Defense counsel was excluded from the *in camera* hearing, and the transcript of the hearing had been sealed and preserved in the trial court's records. See Ill. S. Ct. R. 415(f) (eff. Oct. 1, 1971). Defense counsel therefore did not know nor have access to what occurred during the hearing. It follows that defendant's appellate counsel would have been his first attorney with the opportunity to realize this alleged error. "[F]orfeiture is a limitation on the parties and not the reviewing court, and we may overlook forfeiture where necessary to obtain a just result ***." *People v. Holmes*,

2016 IL App (1st) 132357, ¶ 65. And here, in light of the circumstances, it would be patently unjust to apply the forfeiture doctrine against defendant on this specific claim.

¶ 21                                    B. The Surveillance Location Privilege

¶ 22    The sixth amendment of the United States Constitution and article I, section 8, of the Illinois Constitution guarantee a defendant the right to confront the witnesses against him. U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8. Included within this right to confrontation is the defendant's right to cross-examine the witnesses against him. *People v. Hood*, 2016 IL 118581, ¶ 19 (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987)). However, the right to cross-examination is not limitless. *People v. Klepper*, 234 Ill. 2d 337, 355 (2009). Rather, the sixth amendment merely guarantees the defendant " 'an *opportunity* for effective cross-examination.' " (Emphasis in original.) *People v. Foggy*, 121 Ill. 2d 337, 356 (1988) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). To this end, the trial court may place limits on the scope of the defendant's cross-examination. *People v. Frieberg*, 147 Ill. 2d 326, 357 (1992). We will not reverse the court's decision to limit cross-examination absent "a clear abuse of discretion resulting in manifest prejudice to the defendant." *People v. Kirchner*, 194 Ill. 2d 502, 536 (2000); see also *People v. Quinn*, 332 Ill. App. 3d 40, 43 (2002) (utilizing the same standard of review in a case involving the surveillance location privilege).

¶ 23    In Illinois, there is a qualified privilege concerning the disclosure of secret surveillance locations used by the police. *In re Manuel M.*, 2017 IL App (1st) 162381, ¶ 18. It is a common law privilege but evolved from the statutory "informant's privilege," which was intended to protect the identity of police informants (see 735 ILCS 5/8-802.3 (West 2012)). *People v. Price*, 404 Ill. App. 3d 324, 330 (2010). Similarly, the purpose of the surveillance location privilege is to protect surveillance sites, which are valuable resources to the police, and to protect the safety of police officers and cooperative private citizens. *People v. Criss*, 294 Ill. App. 3d 276, 280 (1998). In determining whether the privilege applies, the trial court must balance the defendant's interest in preparing a defense against the public interest in keeping the location of surveillance secret. *People v. Flournoy*, 2016 IL App (1st) 142356, ¶ 34.

¶ 24    Although the trial court must determine whether disclosure is warranted on a case-by-case basis, two fundamental considerations must be kept in mind. *Id.* First, "[t]he more important a State's witness is to the State's case, the more important the defendant's right to cross-examination concerning the surveillance location becomes." *Id.* Thus, if the State's case is built almost exclusively on the testimony of one surveillance officer, disclosure of the surveillance location "must 'almost always' be required." *Id.* (quoting *People v. Knight*, 323 Ill. App. 3d 1117, 1128 (2001)). Second, if there is no question about a surveillance officer's ability to observe or there is contemporaneous video evidence, disclosure is not required. *Id.*

¶ 25    In determining whether the privilege applies, the trial court may conduct an *in camera* hearing, outside the presence of the State and the defense. *In re Manuel M.*, 2017 IL App (1st) 162381, ¶¶ 20, 26. At this hearing, the surveillance officer "must" disclose his surveillance location. *Flournoy*, 2016 IL App (1st) 142356, ¶ 35. The State has the initial burden of proof to demonstrate that the privilege applies, which it may carry with testimony from the officer that his surveillance point was located on private property with the owner's permission or in a useful location whose value would be compromised by disclosure. *Id.*

¶ 26    If the State meets its burden, the burden of persuasion shifts to the defendant to demonstrate that the privilege should not apply. *Id.* ¶ 36. In order for the defendant to compel

disclosure when the issue is raised before trial, "the defendant must make a strong showing that the disclosure of the location is material or necessary to his defense and that his need for the information outweighs the public's interest in keeping the location secret." (Internal quotation marks omitted.) *Id.* Among the relevant factors the trial court should consider are the offense charged, the potential defenses, and the importance of the privileged information. *Id.* ¶ 35.

¶ 27                           C. The Officer's Exact Surveillance Location

¶ 28        We first address defendant's main contention on appeal that, during the *in camera* hearing, the trial court failed to ascertain Officer Frano's exact surveillance location. During the hearing, Frano revealed his surveillance location generally but did not identify his specific surveillance point, contrary to the directive of our case law. See *In re Manuel M.*, 2017 IL App (1st) 162381, ¶ 26; *Knight*, 323 Ill. App. 3d at 1126-27. We require this disclosure because the precise surveillance location is one of the critical facts necessary for the court to properly apply the burden-shifting approach and ultimate balancing of the public interest in keeping the surveillance location secret against the defendant's interest in preparing a defense for trial. Without knowing exactly from where the officer conducted his surveillance, the court cannot satisfactorily determine whether limiting the defendant's cross-examination to only such matters as distance, lighting, weather conditions, and the existence of any obstructions will allow the defendant to adequately present his defense. Moreover, the entire purpose of having the hearing *in camera* outside the presence of the defense with the transcript of the proceeding sealed is so the officer can reveal his exact surveillance location. Consequently, without determining the exact surveillance location, the primary rationale for proceeding *in camera* is defeated, and the court cannot sufficiently balance the competing interests, thus resulting in the court being unable to effectively exercise its discretion. The trial court therefore erred when it failed to ascertain Frano's exact surveillance location.

¶ 29             D. Testimony on Matters Unrelated to the Officer's Surveillance Location

¶ 30        Additionally, we note that, during the *in camera* hearing, Officer Frano testified to matters unrelated to his surveillance location. For example, Frano testified about his actions after he left his surveillance post, including how long he lost sight of defendant and where defendant was eventually detained. Frano also testified about the recovery of drugs in the gangway and the $175 found on defendant. The *in camera* hearing is intended to be a limited inquiry of the surveillance officer on potentially privileged matters (see *In re Manuel M.*, 2017 IL App (1st) 162381, ¶ 26), not expanded into the functional equivalent of that officer's trial testimony. Here, when the trial court allowed the scope of the *in camera* hearing to expand into matters unrelated to Frano's surveillance location outside the presence of defendant and his attorney, defendant's constitutional right to confrontation was violated. See *id.* ¶ 27.

¶ 31        While the *in camera* hearing should be limited to potentially privileged matters, that is not to say that testimony on matters unrelated to the surveillance location is never proper when determining whether the privilege should apply. In fact, such testimony, especially when the motion to disclose is raised pretrial, may be helpful for the court's ultimate balancing of the public interest in nondisclosure against the defendant's interest in preparing a defense. But any such testimony must be elicited with defendant and his attorney present in open court. See *id.* ¶ 26.

We next consider the propriety of allowing the State to be present during the *in camera* hearing and to examine Officer Frano. This court has been less than clear about whether it is permissible for the State to appear and participate in the *in camera* hearing. For instance, in *Knight*, 323 Ill. App. 3d at 1127, we found that the hearing should occur "out of the presence of defendant and defense counsel" and, in the hearing, the State must make a preliminary showing that disclosing the surveillance location would harm public interests. See also *People v. Britton*, 2012 IL App (1st) 102322, ¶ 35 (Epstein, J., specially concurring) (suggesting that trial courts hold "an evidentiary hearing 'at which the State may attempt to justify application of the privilege' " and " '[d]efense counsel shall not attend the hearing' " (quoting *State v. Garcia*, 618 A.2d 326, 332 (N.J. 1993))). These cases, whether implicitly or explicitly, may have given the impression that not only is the State allowed to be present during the *in camera* hearing, but also permitted to participate. Conversely, in *Price*, 404 Ill. App. 3d at 332, and *In re Manuel M.*, 2017 IL App (1st) 162381, ¶ 26, we found that the *in camera* hearing should occur "outside the presence of both the State and the defense." These cases have expressly concluded that the State may not have any role during the hearing.

Illustrative in resolving this conflict are other criminal cases in which a privilege has been invoked to prevent the disclosure of certain evidence. For example, in *People v. Holmes*, 155 Ill. App. 3d 562, 565-66 (1987), *aff'd*, 141 Ill. 2d 204 (1990), a defendant sought to obtain a statement made by his alleged accomplice and the individual who implicated him in an armed robbery. The State, however, objected to disclosing the full statement because it would jeopardize unrelated, ongoing police investigations and endanger police informants. *Id.* at 566. Following an *in camera* hearing, in which the State participated, the court allowed the State to provide the defendant with an excised copy of the statement. *Id.* On appeal, this court determined that the *ex parte* hearing was improper, concluding that "either counsel for both parties should have been allowed to be present during the *in camera* proceeding [citation] or both sides excluded [citation]." (Emphasis omitted.) *Id.* at 580. We ultimately found, however, that the error was harmless because the trial court correctly determined that the excised portions of the statement were, in fact, privileged and not favorable to the defendant. *Id.* Similarly, in *People v. Dace*, 114 Ill. App. 3d 908, 915 (1983), *aff'd*, 104 Ill. 2d 96 (1984), and *People v. Phipps*, 98 Ill. App. 3d 413, 418 (1981), this court found that, when a witness or a therapist seeks to invoke a statutory privilege, the trial court is required to hold an *in camera* hearing in the presence of both the State and defense counsel to determine the relevancy and materiality of the evidence in question.

These decisions demonstrate that either both parties or neither party should be present during an *in camera* proceeding to determine whether certain evidence is privileged. Turning back to the surveillance location privilege, the primary purpose of the *in camera* hearing, as discussed, is for the trial court to ascertain the officer's exact surveillance location and then determine whether the State has satisfied its initial burden of proof that the privilege should apply. Only thereafter does the burden shift to the defendant to persuade the court that disclosure is warranted. Thus, at the point in the burden-shifting approach when the *in camera* hearing occurs, the defense has no right yet to know of the surveillance location. Our case law has universally found that the defense may not appear at the *in camera* hearing. See, *e.g.*, *In re Manuel M.*, 2017 IL App (1st) 162381, ¶ 20; *Flournoy*, 2016 IL App (1st) 142356, ¶ 35; *Price*, 404 Ill. App. 3d at 332. It follows that, because the defense may not appear at the hearing, the

State may not as well. See *Holmes*, 155 Ill. App. 3d at 580. We therefore agree with the conclusion reached in both *Price* and *In re Manuel M.* that the State may not appear during the *in camera* hearing. Instead, the court must conduct the *in camera* examination with just the surveillance officer, limiting its inquiry into only matters related to the surveillance location. Therefore, in this case, the trial court also erred when it allowed the State to not only appear during, but also participate in, the *in camera* hearing.

¶ 36                     F. Defendant's Opportunity to Satisfy Its Burden of Persuasion

¶ 37        Lastly, we observe that the trial court did not properly apply the requisite burden-shifting approach. Once Frano completed his testimony, while in the presence of only the State, the court indicated that it would deny defendant's motion based on his testimony. Subsequently, in the presence of both parties in open court, the court denied defendant's motion without allowing him an opportunity to argue why the privilege should not apply.

¶ 38        Under the required burden-shifting approach, once the State satisfies its initial burden of proof, the burden of persuasion shifts to the defendant to overcome the State's application of the privilege. See *Flournoy*, 2016 IL App (1st) 142356, ¶¶ 35-36. In this case, assuming *arguendo* that, based on Frano's testimony, the State sufficiently established its initial burden of proof, the trial court, however, denied defendant's motion without providing him the opportunity to meet his burden of persuasion to show that the privilege should not apply. Regardless of whether the court considered defendant's interest in preparing a defense when it concluded that the privilege should apply, it never provided defendant the required opportunity to overcome the State's application of the privilege, a critical component in protecting his right to confrontation. Consequently, the trial court also erred in this regard.

¶ 39        In light of these fundamental deficiencies in the trial court's application of the surveillance location privilege, it was not in a position in which it could properly exercise its discretion. Thus, we find the court abused its discretion to the manifest prejudice of defendant. Accordingly, we must reverse defendant's conviction and remand the matter for a new trial. We also must vacate the trial court's order allowing the State to invoke the surveillance location privilege. However, we need not determine whether, based on the facts of this case, the surveillance location privilege should apply. If upon remand, the State seeks to invoke the privilege once again, that determination must be made by the court after a proper limited *in camera* hearing outside the presence of both the State and the defense where it ascertains Frano's exact surveillance location. The court must also provide defendant an opportunity to meet his burden of persuasion.

¶ 40                                   III. CONCLUSION

¶ 41        For the foregoing reasons, we reverse defendant's conviction and remand the matter for a new trial. We also vacate the trial court's order allowing the State to invoke the surveillance location privilege.

¶ 42        Reversed and remanded.