2020 IL App (1st) 180261-U

No. 1-18-0261

Order filed November 12, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit |
| | ) | Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 15 CR 14372 |
| | ) | |
| FREDRICK JOHNSON, | ) | Honorable |
| | ) | Mauricio Araujo, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Gordon and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1     *Held*:   We decline defendant's request to abandon the surveillance location privilege.

¶ 2     After a bench trial, defendant Fredrick Johnson was convicted of unlawful delivery of a controlled substance and was sentenced to six years in prison. The State's case relied on the testimony of a police officer who observed defendant's actions while conducting surveillance from a covert location. Applying the surveillance location privilege, the trial court denied defendant's pre-trial request for disclosure of the officer's location and sustained the State's objections to

defendant's attempts to elicit such information on cross-examination. On appeal, defendant asks us to abandon the surveillance location privilege as a matter of law. We decline to do so. And because defendant raises no other challenge to his conviction or sentence, we affirm.[1]

¶ 3                                    I. BACKGROUND

¶ 4      While conducting surveillance from a covert location, Officer Ruggiero (whose first name is not mentioned in the record) of the Chicago Police Department observed defendant engage in a hand-to-hand drug transaction. Before trial, defendant filed a motion to compel the State to disclose the surveillance location. The trial court conducted an *in camera* hearing with the officer, but there is no transcript of that hearing in the record on appeal. At a subsequent status hearing, the trial court ruled that disclosure of the officer's surveillance location was not required. The court did not explain the reasons for its ruling.

¶ 5      At trial, Officer Ruggiero testified that, around 10 a.m. on August 11, 2015, he was conducting surveillance in the vicinity of 3900 West Grenshaw Street, a residential area near the intersection of Roosevelt Road and Springfield Avenue. From a distance of less than 200 feet, Officer Ruggiero observed defendant engage in a hand-to-hand transaction with a man later identified as Tremayne Gowdy. (Gowdy was tried separately and is not a party to this appeal.) Officer Ruggiero observed defendant accept United States currency from Gowdy and in exchange give Gowdy a package a little bigger than the palm of a hand.

¶ 6      After the exchange, Officer Ruggiero observed Gowdy head north on Springfield toward Grenshaw, eventually arriving at a vacant lot. There, Officer Ruggiero observed Gowdy put a few

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

items from the package in his shoes before placing the package under a piece of wood. Officer Ruggiero then observed Gowdy walk south on Springfield and engage in hand-to-hand transactions with two unknown individuals, accepting United States currency in exchange for items retrieved from his shoes.

¶ 7    At that point, Officer Ruggiero radioed enforcement officers and directed them to detain defendant and Gowdy. Officer Ruggiero then went to the vacant lot and retrieved the package that Gowdy had hidden under a piece of wood. In the package were 12 individual baggies containing a white, powdery substance. The parties stipulated that six of the twelve baggies tested positive for the presence of heroin. After defendant was taken into custody, Officer Ruggiero searched him and found $129 in United States currency in his possession.

¶ 8    On cross-examination, Officer Ruggiero testified that, during the surveillance operation, he was on foot and mobile in the area of Roosevelt and Springfield. When defense counsel asked Officer Ruggiero if he "at some point walked a distance on Roosevelt," the State objected on the ground that the answer would divulge the officer's surveillance location. The trial court halted the proceedings and conducted another *in camera* hearing with Officer Ruggiero. (Again, no transcript of the *in camera* hearing is in the record on appeal.) Back in open court, the trial judge explained that he asked Officer Ruggiero "several questions" and was adhering to the prior ruling denying defendant's motion to disclose the surveillance location.

¶ 9    When cross-examination resumed, Officer Ruggiero testified that he was no farther than 200 feet from defendant when he observed defendant and Gowdy engage in their hand-to-hand transaction and was within 100 feet of Gowdy when he observed Gowdy place the package under a piece of wood in the vacant lot. He testified that he used a monocular visual aid during the

surveillance but was unable to see the specific denominations of the currency defendant received from Gowdy or tell whether the package defendant gave Gowdy had any distinctive markings. He also could not recall whether he had seen the color of the package.

¶ 10    Defense counsel then returned to the subject of Officer Ruggiero's surveillance location. Officer Ruggiero testified that the vacant lot where Gowdy hid the package was on the north side of Grenshaw, about three blocks east of Springfield, and that there were two buildings between Springfield and the vacant lot. Officer Ruggiero testified that he was north of Gowdy as Gowdy walked south on Springfield after hiding the package in the vacant lot. However, when defense counsel asked Officer Ruggiero about his position in relation to Gowdy after Gowdy completed his hand-to-hand transactions with the unknown individuals, the trial court sustained the State's objection on the ground that an answer would divulge Officer Ruggiero's surveillance location. The trial court sustained a similar objection by the State when defense counsel asked Officer Ruggiero if he was north or south of Grenshaw when he observed Gowdy walking away from the vacant lot.

¶ 11    After hearing closing argument, the trial court found defendant guilty of unlawful delivery of a controlled substance. The court explained that the case "all comes down to credibility" and that Officer Ruggiero's testimony was "highly credible."

¶ 12    Defendant filed a motion for a new trial, arguing (among other things) that the trial court erred in denying his pre-trial motion for disclosure of Officer Ruggiero's surveillance location and sustaining the State's objections to defense counsel's attempts to question Officer Ruggiero about his surveillance location on cross-examination. The trial court denied the motion.

¶ 13    After hearing argument from both sides concerning aggravating and mitigating factors, the trial court sentenced defendant to six years in prison. The trial court denied defendant's motion to reconsider the sentence, and defendant filed a timely notice of appeal.

¶ 14                                    II. ANALYSIS

¶ 15    On appeal, defendant urges us to reject the surveillance location privilege as a matter of law. Because the question is one of law, our review is *de novo*. See *Klaine v. Southern Illinois Hospital Services*, 2016 IL 118217, ¶ 13; *Selby v. O'Dea*, 2017 IL App (1st) 151572, ¶ 14.

¶ 16    As an initial matter, the State argues that defendant forfeited his challenge to the surveillance location privilege by failing to raise it in his post-trial motion. To preserve an issue for review, a defendant generally must raise the issue at trial and again in a post-trial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Defendant filed a pre-trial motion to compel the State to disclose Officer Ruggiero's surveillance location and again raised the issue at trial when seeking to question Officer Ruggiero about that subject during cross-examination. He later argued in a post-trial motion that the trial court erred in denying his request for disclosure of Officer Ruggiero's surveillance location and in sustaining the State's objections to his cross-examination questions on that subject. Although defendant did not urge the trial court to reject the surveillance location privilege as a matter of law, raising that argument in the trial court would have been futile, as the trial court was bound to apply established appellate precedent recognizing the privilege. By challenging the trial court's application of the surveillance location privilege, both before, during, and after trial, defendant adequately preserved for appellate review his current contention that the privilege should be abandoned as a matter of law. We thus proceed to the merits of that argument.

¶ 17    The surveillance location privilege is a qualified privilege that allows the State, in certain circumstances, to prevent disclosure of covert surveillance locations used by law enforcement officers. *People v. Jackson*, 2017 IL App (1st) 151779, ¶ 23. It is a common law privilege that "evolved from" the statutorily codified informant's privilege (*People v. Price*, 404 Ill. App. 3d 324, 330 (2010) (citing 735 ILCS 5/8–802.3 (West 2008))), which allows the State to withhold disclosure of the identity of individuals who provide law enforcement officials with information about violations of law (*Roviaro v. United States*, 353 U.S. 53, 59 (1957)).

¶ 18    Both privileges further the public interest in effective law enforcement. By shielding the identities of confidential informants, the informant's privilege protects the safety of informants and their families, preserves their continuing usefulness to police, and encourages others to report violations of law. See *United States v. Green*, 670 F.2d 1148, 1155 (D.C. Cir. 1981). Similarly, by preventing disclosure of covert surveillance locations used by the police, the surveillance location privilege maintains the future value of such locations as law enforcement tools and protects the safety of the officers who use them. *Id.* In addition, where the surveillance location is on private property, the surveillance location privilege safeguards private citizens who allow police to use their property for surveillance purposes and encourages others to allow the use of their property for such purposes. *Id.* "In both situations, once a criminal becomes aware of [a] surveillance position or [the] identity of [an] informer, the value of that tool to law enforcement is lost, and the lives of police officers and cooperative individuals are jeopardized." *People v. Criss*, 294 Ill. App. 3d 276, 280 (1998).

¶ 19    But neither privilege is absolute. Both require a trial court to balance the public interest that application of the privilege would promote against a defendant's right to present a defense.

*Jackson*, 2017 IL App (1st) 151779, ¶ 23. "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the [informant's] privilege must give way." *Roviaro*, 353 U.S. at 60-61. The same standard governs application of the surveillance location privilege. When a defendant seeks disclosure of a covert surveillance location for use at trial, he "need only show that the location is 'relevant and helpful to [his] defense *** or is essential to [a] fair determination of [the] cause' in order to overcome the [surveillance location] privilege." *Price*, 404 Ill. App. 3d at 332-33 (quoting *Roviaro*, 353 U.S. at 60-61).

¶ 20    Our precedents establish a procedural framework for trial courts to follow when deciding whether the surveillance location privilege should apply in a given case. As the proponent of the privilege, the State bears the initial burden of establishing that its application would serve the purposes underlying the privilege. *Price*, 404 Ill. App. 3d at 331. To do so, the State must present evidence that the surveillance location was either on private property with the permission of the owner or in a location that is useful and whose utility would be compromised by disclosure. *Id.* at 332. If the State makes this required showing, the burden shifts to the defendant to demonstrate that disclosure of the surveillance location is relevant and helpful to his defense or essential to a fair determination of the cause. *Id.* At this stage, the trial court "must balance the public interests underlying the surveillance [location] privilege against the need of the defendant for disclosure in order to defend himself at trial, based on the specific facts of each individual case." *Id.* "To aid in making this determination, the trial court may require the surveillance officer to disclose the surveillance location *in camera* outside the presence of both the State and the defense." *Id.*

¶ 21 Although the court must assess whether disclosure is warranted on a case-by-case basis, the importance of the surveillance officer's testimony to the State's case—and the corresponding importance to the defendant of effectively cross-examining the officer about his observations— must remain at the forefront of the analysis. In fact, we have stressed that where the State's case "turns almost exclusively on [a surveillance] officer's testimony, disclosure [of the officer's surveillance location] must almost always be ordered." *People v. Knight*, 323 Ill. App. 3d 1117, 1128 (2001). By contrast, where "there is no question about a surveillance officer's ability to observe or there is contemporaneous video evidence," the need for disclosure is weaker. *Jackson*, 2017 IL App (1st) 151779, ¶ 24.

¶ 22 With that background in mind, we turn to defendant's contentions on appeal. Notably, defendant does not argue that the trial court erred in its balancing of the competing interests when applying the surveillance location privilege to the facts of his case. Nor does he contend that the trial court failed to properly follow the procedural framework for applying the privilege that we outlined above. Defendant has thus forfeited any such argument. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018). Defendant's sole argument on appeal is that the surveillance location privilege should be rejected as a matter of law. He contends that the creation of an evidentiary privilege is presumptively a task for the legislature and that the surveillance location privilege does not satisfy the test articulated by our supreme court in *People ex rel. Birkett v. City of Chicago*, 184 Ill. 2d 521 (1998), for the judicial recognition of an evidentiary privilege.

¶ 23 Unlike in *Birkett*, however, the question here is not whether to adopt a heretofore unrecognized privilege, but whether we should maintain adherence to what is now a well-established one. Indeed, this court first recognized the surveillance location privilege in 1998.

*Criss*, 294 Ill. App. 3d at 281. And in the two decades since then, we have "developed a consistent and long-standing body of law regarding the privilege." *People v. Palmer*, 2017 IL App (1st) 151253, ¶ 22 (collecting cases). During this time, "our supreme court has not cast doubt on the continuing viability of this body of law." *Id.* ¶ 23. Plus, while the surveillance location privilege is of common law origin, it is "based on and evolved from" a statutorily codified privilege. *Price*, 404 Ill. App. 3d at 330. Because "the surveillance location privilege derives from the legislatively enacted informant's privilege and implicates the same policy concerns," abandoning it entirely, after more than twenty years of consistent application, would be "ill-advised." *Palmer*, 2017 IL App (1st) 151253, ¶ 23.

¶ 24    Defendant also argues that "routine invocation" of the surveillance location privilege violates a defendant's Sixth Amendment right to cross-examine the witnesses against him. But "the right to cross-examination is not limitless." *Jackson*, 2017 IL App (1st) 151779, ¶ 22 (citing *People v. Klepper*, 234 Ill. 2d 337, 355 (2009)). Rather, "[a] trial court is afforded broad discretion to limit the scope of cross-examination, and its restriction of cross-examination will not be reversed absent an abuse of that discretion." *Palmer*, 2017 IL App (1st) 151253, ¶ 25. As discussed, the surveillance location privilege is a qualified privilege. When applying it, a trial court must balance the public interest in protecting the utility of law enforcement surveillance locations and the safety of the officers and citizens connected to them against the defendant's right to present a defense. *Jackson*, 2017 IL App (1st) 151779, ¶ 23; *Palmer*, 2017 IL App (1st) 151253, ¶ 26. A defendant does not bear a heavy burden under this approach. Rather, a defendant "need only show that the location is 'relevant and helpful to [his] defense *** or is essential to [a] fair determination of [the] cause' in order to overcome the [surveillance location] privilege." *Price*, 404 Ill. App. 3d at

332-33 (quoting *Roviaro*, 353 U.S. at 60-61). In practice, this means that where the State's case "turns almost exclusively on [a surveillance] officer's testimony, disclosure [of the officer's surveillance location] must almost always be ordered." *Knight*, 323 Ill. App. 3d at 1128. The balancing test therefore ensures that application of the surveillance location privilege will not unduly infringe a defendant's constitutional rights to present a defense and cross-examine the witnesses against him.

¶ 25    Defendant suggests that, under *Crawford v. Washington*, 541 U.S. 36 (2004), the scope of a defendant's cross-examination of a witness may not be limited by balancing competing interests. But *Crawford* concerned a defendant's right to confront the witnesses against him. In overruling *Ohio v. Roberts*, 448 U.S. 56 (1980), the Court held that regardless of any judicial assessment of the reliability of a declarant's out-of-court testimonial statements, the Sixth Amendment bars their admission at trial unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 67-69. But *Crawford* did not alter the well-established principles that the Sixth Amendment "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish" (emphasis in original) (*Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (*per curiam*)), and that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on *** cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant" (*Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

¶ 26    Finally, defendant contends that the procedural framework for applying the surveillance location privilege has proven to be unworkable. The only example defendant provides concerns

the *in camera* hearing mandated by our precedents. As discussed, when assessing whether a defendant's need for information about a surveillance location outweighs the public interest in maintaining the secrecy of the location, "the trial court may require the surveillance officer to disclose the surveillance location *in camera* outside the presence of both the State and the defense." *Price*, 404 Ill. App. 3d at 332. Defendant contends that this process itself violates a defendant's right to confrontation and cross-examination because it allows the surveillance officer "to offer the court reasons why he should not have to disclose his location in a forum where he escapes cross-examination completely." But this argument rests on a mistaken understanding of the scope of the *in camera* hearing. As explained in *In re Manuel M.*, "the trial court's *in camera* examination of the surveillance officer should be limited to a disclosure of the exact location from which the surveillance was conducted, nothing more." 2017 IL App (1st) 162381, ¶ 26. Beyond that, "[a]ny testimony or argument addressing the public interest to be protected by nondisclosure of the location should be made in open court." *Id.* We have also explained that, "at the point in the burden-shifting approach when the *in camera* hearing occurs, the defense has no right yet to know of the surveillance location." *Jackson*, 2017 IL App (1st) 151779, ¶ 35. Accordingly, allowing the surveillance officer to be questioned about the exact location of his surveillance position at an *in camera* hearing, while requiring that all other testimony and argument on the applicability of the privilege occur in open court, appropriately balances the parties' respective interests and does not violate a defendant's right to confrontation or cross-examination.

¶ 27                                    III. CONCLUSION

¶ 28    For the foregoing reasons, we decline defendant's invitation to abandon the surveillance location privilege as a matter of law. And because defendant does not contest the trial court's

application of the privilege to the facts of his case or raise any other challenge to his conviction or sentence, we affirm the circuit court's judgment.

¶ 29    Affirmed.